Charles E. Sloan et al., Board of Education, and Charles E. Sloan et al., Individually, Appellants, v. Oscar L. Hawkins, County Clerk of Marion County and Board of Education, Appellees.

**Term No. 49F9.**

Opinion filed April 25, 1949. Released for publication May 25, 1949.

GLENDON C. HODSON and MURRAY, MURRAY & STEPHENS, all of Centralia, for appellants.

ROBERT M. CRAIN and WHAM & WHAM, all of Centralia, for appellees; JOHN P. WHAM and WILLIAM B. WHAM, both of Centralia, of counsel.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Marion county, quashing a writ of certiorari and dismissing the complaint for want of equity on a complaint filed by appellants, Charles E. Sloan, Charles H. Wesner, A. H. Sebastian, Russell A. Brewer and Harvey Hurd, as the Board of Education of Odin Community High School District No. 700, Marion county, Illinois, and Charles E. Sloan, Charles H. Wesner, A. H. Sebastian, Russell Brewer and Harvey

Hurd, individually (hereinafter called plaintiffs), as against appellees, Oscar L. Hawkins, county clerk of the county of Marion, State of Illinois, and the Board of Education of Sandoval Community High School District No. 401, in Marion county and Clinton county, Illinois (hereinafter called defendants). Costs were assessed against the individual members of the plaintiff Board of Education.

The action was brought by the Board of Education of the Odin Community High School District No. 700, in Marion county, to set aside a proceeding by which approximately 60 per cent of the territory within its boundaries was "taken from it" and attached to Sandoval Community High School District No. 401, in Clinton and Marion counties. The evidence disclosed that the detachment of the territory and the change of boundaries complained of was brought about by "concurrent action of the several Boards of Trustees in which the Districts lie" pursuant to petitions by two-thirds of the voters residing within the territory and upon proper notice and hearing thereon, in conformity with the applicable sections of the School Code (Ill. Rev. Stat. 1947, ch. 122, pars. 4—30, 4—35, 4—37 [Jones Ill. Stats. Ann. 123.732, 123.737, 123.739]). Plaintiffs, on this appeal, do not question the jurisdiction of the board of school trustees nor, apparently, the procedure followed, including the "concurrent action" upon the petitions. The petitions were granted by the four boards of trustees involved and thereafter, within the period prescribed, certain individuals filed their respective notices of appeal to the "County Superintendent of Schools of Marion County, Illinois." A formal hearing was had upon such appeals in the office of the Marion county superintendent of schools. In addition to the Marion county superintendent of schools, the Clinton county superintendent of schools was also present, as well as attorneys for all the parties. The action of the school trustees was sustained

by the Marion county superintendent of schools, and in such decision the Clinton county superintendent of schools concurred and joined, and in fact, signed the decision with the Marion county superintendent of schools, who states in his letter that the Clinton county superintendent of schools "and I" agree to uphold the action of the trustees. The particular portion of the Odin District which was detached, immediately adjoins the Sandoval District.

The evidence disclosed that the Sandoval High School District to which the area in question is now attached, has an established four-year high school, recognized by the State Superintendent of Public Instruction for approximately 30 years, and accredited by the University of Illinois and the North Central Association of Colleges and Secondary Schools. The school plant is a modern concrete building, built in 1940, and contains ten classrooms, a study hall, an auditorium, a library, and a gymnasium. It is attended solely by high school students and offers a very wide choice of subjects to students. The school employs eleven full-time teachers possessing college degrees required for accredited high school instruction. About 220 students attend the high school, and from 20 to 23 of the students come from the attached area involved in this proceeding. The additional students necessitate the employment of one extra teacher at an average salary of $2,700 per school year, and additional bus service at a transportation cost of about $250 a month.

The Odin Community High School District was organized in May of 1945. At the time the district was formed it had an equalized assessed valuation in excess of the $1,000,000 valuation then required by statute for the formation of a community high school district. The first term of school in the Odin District began in September 1945 and on petition of the residents of 28 sections of the district, the school trustees of the township, on February 11, 1946, granted the prayer of the

petition, as did the trustees of other townships, and ordered the 28 sections attached to the Sandoval District. The Odin District has attempted the operation of a four-year high school since September 1945. It owns no building, but conducts its school in a nineteen-year-old structure in the village of Odin, owned and used by Grade School District No. 122. It has received probationary recognition from the State of Illinois Department of Public Instruction. The principal of the grade school also acts as the principal of the high school. A report sent to the Department of Public Instruction indicates that the curriculum is very narrow, that the school is crowded and offers a bare minimum by way of high school program, and that the teachers, including the head of the school, do not have degrees so as to meet the standards which have been established for high school teachers. Only from two to four students from the detached area attend the Odin high school. Odin High School District, prior to the trial, had received taxes from the entire original area, but operated at a deficit for the years, 1946 and 1947, the deficit for 1946 being $17,000, and for 1947, $21,732.39. The assessed valuation of the property situated in the Odin District amounted in 1945, to $922,666, of which $200,995 represented property of the detached area. The 1946 assessed valuation of the original district (being a full value assessment under the so-called "Butler Bill") aggregated $2,282,110, of which $642,880 was the assessed valuation of the detached area. At the existing $1 tax rate established by referendum, this valuation would bring $6,428.80 in taxes out of the detached area, and $21,592.30 out of the remaining portion of the Odin District. It was shown that without the detached area and the obligation to serve it, the Odin District would be entitled to receive additional State aid to the total of $1,592.35, and that upon the basis of the 1947 figures the increase in State aid would reduce the district net income loss which re-

sults from the detachment, to $3,184.42. The decision of the Marion county superintendent of schools, concurred in by the superintendent of the adjoining county, upheld the concurrent action of the four boards of school trustees and was stated by him to represent his individual opinion. He stated that he wrote the opinion and simply had the Clinton county superintendent sign it also, and also that it was his honest judgment as to what was for the best interests of the boys and girls in that territory.

The complaint in the circuit court prayed that the detachment proceedings be set aside and that additional relief by injunction be granted. As finally amended it presented two separate causes of action, one of them being a petition for a common-law writ of certiorari to review the record of an inferior officer or tribunal, in this case the Marion county superintendent of schools, and for the purpose of determining his jurisdiction. The other cause of action set forth in the complaint raises the issue of whether the trustees and county superintendent of schools had been guilty of fraud, or such gross abuse of statutory discretion as to demand equitable intervention. A motion to quash the writ of certiorari was sustained by the trial court, and the trial court, likewise, dismissed the chancery complaint for want of equity.

Only one issue is raised in support of the contention that the circuit court erred in sustaining the motion to quash the writ of certiorari. It is contended on appeal in this court that the Marion county superintendent of schools did not rule on the appeal from the actions of the boards of trustees in a manner authorized by statute and that, therefore, the entire proceeding is void, including the concurrent action of the four boards of school trustees changing the boundaries of the adjacent districts.

On appeal from the actions of the school trustees, the county superintendent of schools has the duty

and authority to "investigate the case" (Ill. Rev. Stat. 1947, ch. 122, pars. 4—38, 4—39 [Jones Ill. Stats. Ann. 123.740, 123.741]). This gives him a broad power to do what is necessary to enable him to make a proper decision (*Logue v. Batterton*, 247 Ill. 605, 612).

██ Before 1945 the statutes of the State of Illinois required joint action between county superintendents when any part of two districts were situated in different counties. The amendment now does not require such joint action. We do not construe the change in the Act to prohibit participation or concurrence by the county superintendent of schools of an adjoining county, and his participation under the facts and record in this case can amount only to surplusage and would not operate to invalidate the action of the Marion county superintendent of schools. It was apparent that the superintendent of schools of Marion county simply solicited all the aid he could obtain so as to come to a personal conclusion which he felt was proper. Formality and a high degree of accuracy on the part of school trustees and officials is not exacted by the courts (*Board of Education of Glencoe v. Trustees of Schools*, 174 Ill. 510, 513; *People ex rel. Chamberlin v. Trustees of Schools of Township No. 1*, 319 Ill. App. 370). We, therefore, conclude that the action of the circuit court in allowing the motion to quash the writ of certiorari was proper.

██ A court of equity will intervene to prevent fraudulent action or arbitrary abuse of discretion by trustees or county superintendents of schools when such abuse of discretion or fraudulent action is established by clear and convincing proof (*Fisher v. Birkey*, 299 Ill. 145, 151; *School Trustees v. School Directors Dist. No. 2*, 190 Ill. 390, 393), but it is the established law that actions of trustees and superintendents of schools are not subject to collateral attack (*People ex rel. Huck v. Estate of Newberry*, 87 Ill. 41, 43, 44;

*School Directors of Union School Dist. v. School Directors of New Union School Dist.*, 135 Ill. 464, 479), and the sole issue on a chancery review of such proceedings is whether the particular action of the trustees or the superintendent was fraudulent, or was clearly such a gross abuse of statutory discretion as to constitute a constructive fraud (*Fisher v. Birkey, supra*). Under the provisions of the statute, unless the court is persuaded that the action of the superintendent was an abuse of statutory discretion as herein stated, the action of the superintendent becomes final and binding (Ill. Rev. Stat. 1947, ch. 122, par. 4—39 [Jones Ill. Stats. Ann. 123.741]).

██ A court of equity cannot sit as an appellate tribunal to review the exercise of judgment by the county superintendent, and if he merely errs in his honest exercise of judgment and there is no gross abuse of his power, a court on appeal cannot set aside the legislative provision giving him power to determine the question (*School Trustees v. School Directors Dist. No. 2*, 190 Ill. 390, 392, 393). In the instant case it appears that all the facts and circumstances were given careful and thorough consideration by the respective boards of trustees and the Marion county superintendent. There was no arbitrary and unreasonable action such as was found in the case of *Fisher v. Birkey*, 307 Ill. 625, 627. The voters of the detached area voted for attachment to the Sandoval District. There is even strong evidence supporting the conclusion that the Odin District is actually in better shape without the detached territory (in contrasting the additional expense which would be required to serve the territory with the loss of revenue). It is difficult to see how the district would be able to survive with the detached territory, if it cannot survive without it. The voters of the detached area have done all that the law requires of them. There is nothing in the evidence to show that the conclusion

of the Marion county superintendent of schools, or of the trustees, was other than in the interests of the inhabitants of the area involved. Certainly there is no such fraud or abuse of statutory discretion as to justify equitable intervention. The action of the trial court in dismissing the chancery cause for want of equity was clearly proper.

The judgment of the circuit court of Marion county will, therefore, be affirmed.

*Judgment affirmed.*

BARDENS, J., and SCHEINEMAN, J., concur.