Louis Bruno and Prosper Pintozzi, Plaintiffs-Appellants, v. Civil Service Commission of the City of Chicago, Illinois, William E. Cahill, Earl E. Strayhorn and Reginald Dubois, Commissioners of the Civil Service Commission of the City of Chicago, Lloyd M. Johnson, Commissioner, Department of Streets and Sanitation of the City of Chicago, and Department of Streets and Sanitation of the City of Chicago, Defendants-Appellees.

Gen. No. 48,666.

First District, Third Division.

November 7, 1962.

Daniel A. Gallagher, of Chicago, for appellants.

John C. Melaniphy, of Chicago (Sydney R. Drebin and John J. O'Toole, of counsel), for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment order of the Circuit Court of Cook County, entered in a suit brought under the Administrative Review Act (Ill Rev Stats, c 110, §§ 264–279), sustaining the findings and decision of the Civil Service Commission discharging two laborers employed by the City of Chicago.

The charges brought before the Civil Service Commission stated that Louis Bruno and Prosper Pintozzi, (who were the plaintiffs in the case before us and will be hereinafter referred to as the plaintiffs), had on several occasions during the year 1959, the exact dates of which were unknown to the relator at the time the charges were brought, been guilty of conduct unbecoming an employee of the City of Chicago in that they received, accepted and held "checks and the benefits therefrom" of the City of Chicago in excess of the compensation due them for the periods of employment which the checks were intended to cover,

and failed and neglected to notify their superiors of such errors. The plaintiffs here contend that the findings and decision of the Civil Service Commission were against the manifest weight of the evidence and that the Civil Service Commission erred in not sustaining the plaintiffs' motions to quash and dismiss the charges.

From the evidence it appears that Pintozzi is 55 years old, married, and has four children. He came from Italy to America in 1924 and started to work for the city in 1952 as a laborer with the Department of Streets and Sanitation, in the Bureau of Electricity. Bruno was 25 years old, married, and has one child. He had three years' high school education. He had worked at various occupations and for various companies in Chicago. He had been employed by the City of Chicago for two years as a laborer. Both plaintiffs had civil service status. The plaintiffs were assigned to work gangs. The foreman of a work gang makes out a daily time sheet indicating the time each man under his control has worked. These daily time sheets are transmitted to the timekeeping division of the Bureau of Electricity at the end of each work day. The timekeeping division then transcribes the time from the foreman's daily time sheet to a semimonthly time accumulation sheet from which the final payroll is compiled in the office of the comptroller for the City of Chicago.

Le Blanc, the foreman of the work gang to which the plaintiffs were assigned in 1959, testified that he had recorded the daily time of the plaintiffs along with the other laborers in his gang, and sent in these daily time sheets in accordance with the ordinary procedure above referred to. In December 1959 the City of Chicago engaged an accounting firm to make an audit of the payrolls of the department. The audit was under the direction of Alvin M. Seavey, a certified public accountant since 1936 with over thirty years of

accounting experience. He testified that the semi-monthly time accumulation sheets were checked against the foreman's daily time sheets and that in many instances the semimonthly accumulation sheets showed that the timekeepers had credited the plaintiffs with working on days which the daily time sheets indicated that they had not worked. There were also several occasions where the timekeepers incorrectly extended the number of days worked by the plaintiffs. These errors in transcription were responsible for the following overpayments:

| Period | | Received by Pintozzi | Received by Bruno |
|---|---|---|---|
| January | 1 to 15, 1959 | $ 66.60 | |
| January | 15 to 31, 1959 | | $ 16.80 |
| February | 15 to 28, 1959 | 22.20 | |
| March | 1 to 15, 1959 | 22.20 | |
| March | 15 to 31, 1959 | 44.40 | |
| April | 1 to 15, 1959 | 22.20 | |
| April | 15 to 30, 1959 | 44.40 | |
| May | 1 to 15, 1959 | 44.40 | |
| June | 1 to 15, 1959 | 36.08 | |
| June | 15 to 30, 1959 | 44.40 | |
| July | 1 to 15, 1959 | 44.40 | 44.40 |
| July | 15 to 31, 1959 | 24.20 | |
| August | 1 to 15, 1959 | 48.40 | 48.40 |
| September | 1 to 15, 1959 | 48.40 | 121.00 |
| September | 15 to 30, 1959 | 72.60 | |
| October | 1 to 15, 1959 | 48.40 | |
| October | 15 to 31, 1959 | | 48.40 |
| November | 1 to 15, 1959 | 96.80 | 72.60 |
| November | 15 to 30, 1959 | 48.40 | 48.40 |
| December | 1 to 15, 1959 | 24.20 | 72.60 |
| | Total | $802.68 | $472.60 |

104

The checks covering the respective periods were introduced. These overpayments and the fact that the plaintiffs did not perform any services for the payments listed above were confirmed by the plaintiffs' foreman, Le Blanc.

Both the plaintiffs were present at the hearing and represented by counsel.

Pintozzi testified that the pay periods ran from the 1st to the 15th, and from the 16th to the end of the month. He identified all of the checks which were introduced, and testified that most of them were endorsed by his wife, though some of them were endorsed by him; that he did not see any of the checks before the question of overpayment was raised; that his wife would only talk over the amount of the checks which were low; and that he knew there was attached to each payroll check a stub which specified the days, but not the hours, which he had worked. The basic pay which he would receive for an eight-hour day was $22.20. He also stated that in the year 1959 he was overpaid $800.

Bruno testified in his own behalf that during the years 1958 and 1959 he was absent from his job a few times because of sickness but he did not know whether he was allowed any sick leave or not. He testified that he never figured the amount of his checks and never had occasion to figure that he was underpaid; that he never kept a record of the number of hours he worked in a day, but it would be about eight; that the first time he knew that they were being overpaid was when they were taken off the job and brought down to the office of a city official.

Both Pintozzi and Bruno testified that they had not been asked to refund the money, but stated that they were willing to refund it. Bruno testified that most of his checks were endorsed by his wife and placed in a savings account, and that she never questions him

about the amount of the paychecks, and he does not know whether he was overpaid $472.60 or not. He stated he did not take time out to check it.

After hearing on June 1, 1960 the Civil Service Commission found that the Commissioner of the Department of Streets and Sanitation of the City of Chicago had filed charges with the Civil Service Commission against Pintozzi and Bruno, that they were guilty of "conduct unbecoming an employee of the City of Chicago," and that these charges were proved. The Civil Service Commission found, among other things, that each of the plaintiffs for a long time prior to December 15, 1959 had received compensation for work they did not perform, and failed to report such overpayments to their superiors although they knew, or should have known, that they were not entitled to such additional compensation, and that such conduct was conduct unbecoming an employee of the City of Chicago. The commission made separate findings against each of the plaintiffs. Both plaintiffs were ordered discharged.

■ The plaintiffs here strenuously urge that the findings and decision are against the manifest weight of the evidence.

In Adamek v. Civil Service Commission, 17 Ill App 2d 11, 149 NE2d 466, we considered the duties of the Circuit Court or Superior Court of Cook County acting under the Administrative Review Act as the primary court of review of the findings and decisions of an administrative agency, and pointed out that those courts could only set aside the findings of an administrative agency if the findings were against the manifest weight of the evidence, and we cited the Supreme Court cases so holding. In that case we further said: ". . . The reviewing courts have no authority to try the case anew upon the record or to substitute their judgment for that of the commission or in any manner to modify or revise the commission's order. Brother-

106

hood of Railroad Trainmen v. Elgin, J. & E. Ry. Co., supra [374 Ill 60, 28 NE2d 97]. The fact that the court, if it had been hearing the case originally, would have from the evidence reached a conclusion different from that reached by the commission is immaterial." In Rude v. Seibert, 22 Ill App2d 477, 161 NE2d 39, the court said:

> "We cannot substitute our opinion for that of the trial court as to the facts unless such trial court's finding is manifestly against the weight of the evidence. . . . 'Manifest means clearly evident, clear, plain, indisputable.' Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 147, 72 NE2d 705. It requires that an opposite conclusion be clearly evident. Arboit v. Gateway Transp. Co., 15 Ill App2d 500, 507, 146 NE2d 582."

In the instant case there does not seem to be any attempt to deny that the plaintiffs were overpaid. Pintozzi specifically admits overpayment. Bruno states he does not know. Therefore the commission was justified in finding that there was overpayment of material amounts.

The plaintiffs argue that there was no proof that they knowingly retained the overpayments. That question is a question of fact for the administrative body to determine, and the only question presented to the courts on review is whether its determination was against the manifest weight of the evidence. In deciding whether the determination was against the manifest weight of the evidence each case on review from an administrative board must be considered on its own merits. Considering the statements by the plaintiffs, together with the fact of the amount of the overpayments (Pintozzi's overpayment in one check was in excess of $96; Bruno's, $121), it cannot be said that the findings of the Civil Service Com-

mission, to the effect that the plaintiffs knew of the overpayments and that they did not inform their superiors, are against the manifest weight of the evidence. The evidence in the record is sufficient to support the findings of the Civil Service Commission. It is immaterial whether or not the trial court, or this court, would under the evidence reach a different conclusion.

██ Plaintiffs were charged with conduct unbecoming an employee of the City of Chicago. They argue that that charge is not sufficiently definite to satisfy the procedural requirements. Section 12 of the Civil Service Act for cities (Ill Rev Stats 1959, c 24½, § 51) provides: ". . . no officer or employee in the classified civil service of any city . . . shall be removed or discharged . . . except for cause upon written charges and after an opportunity to be heard in his own defense. . . ." In Kammann v. City of Chicago, 222 Ill 63, 78 NE 16, the court refers to the above quoted section and says:

> "The statute is silent as to what constitutes 'cause.' Manifestly the right to determine that question is left with the civil service commission, and we have held that this statute does not require the commission to specify, in written rules, every case which shall be deemed cause for removal. Joyce v. City of Chicago, 216 Ill 466."

In the Joyce case the court says:

> "It is also urged that the charge filed with the commission by the general superintendent of police is not sufficiently specific. This proceeding is not a common law or criminal proceeding, but an investigation. While the plaintiff in error had the right to have the charge preferred against him reduced to writing and in such form that he

108

could clearly understand the ground assigned for his removal, it was not necessary that the charge should be formulated in technical language similar to that of a declaration or indictment."

In that case the civil service employee contended that he could not be tried by the commission and removed from office for the offense with which he was charged since the Civil Service Commission had no rule making it a ground for removal. The court said:

"It would, we think, in a city like Chicago, where the classified civil service embraces many hundreds of persons, greatly hamper the commission in the administration of the City Civil Service act to require it, in advance, to specify in written rules every case which should be deemed cause for removal, and the statute should not be held to require it so to do unless such requirement is plain. The charge filed in this case, if true, shows conduct of the plaintiff in error 'unbecoming a police officer' and which clearly rendered him unfit to act as a lieutenant of police in the city of Chicago, and was cause for and justified his removal from such office by the commission."

In Sangamon County Fair and Agricultural Ass'n v. Stanard, 9 Ill2d 267, 137 NE2d 487, the court said:

"It is not possible for the General Assembly to deal with the details of each particular case which may arise in the administration of an act, and since the requirements of a statute can be stated only in general terms, a reasonable discretion must necessarily be reposed in administrative officials charged with its enforcement. . . . [Citing cases.]"

See, also, Eveland v. Board of Education of Paris Union School Dist., 340 Ill App 308, 320, 92 NE2d 182, 188;

Scott v. Board of Education of Alton, 20 Ill App2d 292, 295, 156 NE2d 1, 3.

■ The commission finds that the conduct of the plaintiffs is unbecoming to an employee of the City of Chicago. That finding is not against the manifest weight of the evidence. In Stanulus v. Budd, 1 Ill App2d 334, 117 NE2d 655, the court said:

> "It is fair to conclude that an employer has the right to expect of his employees, regardless of the kind of work performed by them, the qualities of truthfulness, honesty and integrity, and it would follow that the lack of such qualities manifestly would be detrimental to the operation of an employer's business."

■ ■ Plaintiffs raise the point that the charges filed against them were insufficient. They made motions before the commission to quash and dismiss the charges. The motions were overruled, and the Circuit Court affirmed those orders. The two grounds upon which the plaintiffs rely are, first, that the charge should carry with it the statement that the plaintiffs knowingly and wilfully acted in retaining the overpayments without making a report of the same. That objection we think has been answered in the quotation from the Joyce case. Secondly the plaintiffs object to the charges on the ground that the dates of the overpayments are not set out. It appears from the record the assistant corporation counsel of the City of Chicago stated at the time of the hearing that, if the plaintiffs wished, the case could be continued to permit the defendants to file a bill of particulars. This offer was not accepted by the plaintiffs. They proceeded to trial, and by proceeding to trial waived their objections to the insufficiency of the charge. In order for us to determine this fact it was necessary to go to the record. In all fairness this discussion should

110

have been in the abstract. In Joyce v. City of Chicago, supra, the court cites and quotes with approval State v. Kirkwood, 15 Wash 298, 46 P 331:

"The second contention of appellant, however, viz., that the charges were sufficient to support the removal of relator, we think must be sustained. These charges may have been somewhat indefinite, but no motion was made to make them more definite or certain. No objection was made to them in any way. The appellant went to trial upon the complaint as it was and the issues were found against him, and we think it is too late for him now to raise the objection that the complaint was indefinite and not specific."

In Gigger v. Board of Fire and Police Com'rs, 23 Ill App2d 433, 163 NE2d 541, the court said:

"Formality in proceedings before an administrative agency is not exacted by the courts (Palmyra Tel. Co. v. Modesto Tel. Co., 336 Ill 158; Sloan v. Hawkins, 337 Ill App 345, 352, 86 NE2d 117); and, charges need not be drawn with the same nice refinements and subtleties as pleadings in a court of record. Schyman v. Department of Registration & Education of Illinois, 9 Ill App2d 504, 510, 133 NE2d 551."

The objections made by the plaintiffs were waived before the Civil Service Commission. There was no objection preserved for consideration in the trial court or here.

The judgment order of the Circuit Court of Cook County is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.