(No. 50291.—

HARVEY FIREMEN'S ASSOCIATION *et al.*, Appellees,
v. THE CITY OF HARVEY *et al.*, Appellants.

*Opinion filed January 26, 1979.*

CLARK, J., dissenting.

Edward T. Havey, of Chicago, for appellants.

Lavelle, Levinson, Wanninger & Lambert, of Chicago, for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiffs, the Harvey Firemen's Association, Local 471 of the International Association of Firefighters, and several employees of the fire department of the city of Harvey brought suit against the city of Harvey, its civil service commission, and certain city officials and commission members seeking, *inter alia,* a declaratory judgment that the rule of the Harvey civil service commission requiring residency within the city of classified city employees is invalid. The trial court held the rule was within the authority of the commission and valid, but the appellate court reversed (54 Ill. App. 3d 21) on an interlocutory appeal (58 Ill. 2d R. 308). We granted the defendants' petition for leave to appeal (58 Ill. 2d R. 315).

The question as framed on the interlocutory appeal was:

> "Whether the Civil Service Commission for the City of Harvey, Illinois, has the power, express or implied, to adopt a rule requiring civil service employees of the City of Harvey, Illinois, to reside within its corporate limits as a condition of continued employment?"

The plaintiffs do not dispute the constitutionality, in general, of residency requirements for civil servants (see *McCarthy v. Philadelphia Civil Service Com.* (1976), 424 U.S. 645, 47 L. Ed. 2d 366, 96 S. Ct. 1154); nor do they deny the authority of the city of Harvey to enact such an ordinance. Their contention is that there is no grant of authority, express or implied, in the commission's enabling statute, article 10, division 1 ("Civil Service in Cities") of the Illinois Municipal Code (see Ill. Rev. Stat. 1975, ch.

24, par. 10—1—1 *et seq.*) that permits the commission itself to require residency of employees in the city of Harvey.

Harvey's civil service system was adopted November 3, 1942, by a citizen referendum pursuant to section 38 of "An Act to regulate the civil service of cities" (Ill. Rev. Stat. 1941, ch. 24½, par. 76). (The same provision in amended form is now contained within section 10—1—43 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—43).) A city enabling ordinance, enacted on January 18, 1943, transferred to the jurisdiction of the newly authorized commission "all offices and places of employment of the City," except for certain positions not relevant here. On January 22, 1944, the Harvey commission adopted "Rules of the Civil Service Commission of the City of Harvey, Illinois," Rule VI, section 4 of which states:

> "Removal from City. Removal from the City of Harvey shall be cause for the discharge of any person in the Classified Service; excepting, however, such cases as come within Section 3 of Rule III." (The exceptions are not concerned here.)

There have been holdings in other jurisdictions which have upheld various types of public employees continuing residency requirements, some of which are cited by the defendants supporting their contention. Those decisions, however, turned on the constitutionality of the involved statute, charter, ordinance or rule and did not involve the specific question here of authority to promulgate such a rule. See, for example, *McCarthy v. Philadelphia Civil Service Com.* (1976), 424 U.S. 645, 47 L. Ed. 2d 366, 96 S. Ct. 1154; *Wardwell v. Board of Education* (6th Cir. 1976), 529 F.2d 625; *Miller v. Krawczyk* (E.D. Wis. 1976), 414 F. Supp. 998; *Krzewinski v. Kugler* (D.N.J. 1972), 338 F. Supp. 492; *Park v. Lansing Board of Education* (1975), 62 Mich. App. 397, 233 N.W.2d 592; *Williams v.*

*Civil Service Com.* (1970), 383 Mich. 507, 176 N.W.2d 593. Also see generally Hayford & Durkee, *Residency Requirements in Local Government Employment: The Impact of the Public Employer's Duty to Bargain,* 29 Labor L.J. 343 (1978); Comment, *The Constitutionality of Residency Requirements for Municipal Employees,* 24 Emory L.J. 447 (1975); Comment, *Municipal Police Residency Restriction: Remnant of Feudalism or Sound Public Policy?,* 18 St. Louis U.L.J. 214 (1973); Comment, *Residency Requirements for Municipal Employees: Denial Of A Right to Commute?,* 7 U.S.F.L. Rev. 508 (1973).

In *Manion v. Kreml* (1970), 131 Ill. App. 2d 374, the court held that the authority to require residency of Chicago police officers within the city was within the statutory power given the police board of the city of Chicago (Ill. Rev. Stat. 1967, ch. 24, par. 3—7—3.1). The court did not consider whether the civil service commission of the city of Chicago had authority to impose such a requirement.

The plaintiffs correctly point out that the commission, being of statutory origin, must find its authority to promulgate a continuing residency rule within its enabling act. "The city civil service commission exercises a limited or statutory jurisdiction, no presumption of jurisdiction obtains in its favor, and it must find in the statute its warrant for any authority claimed." (*People ex rel. Hurley v. Graber* (1950), 405 Ill. 331, 343.) The commission's response is that its authority is derived from the predecessors of the following sections of article 10, division 1, of the Illinois Municipal Code:

> "The commission shall make rules to carry out the purposes of this Division 1, and for examinations, appointments and removals in accordance with its provisions, and the commission may, from time to time, make par. 10—1—5, formerly Ill. Rev. Stat. 1943, ch. 24½, par. 42.)

> "All applicants for offices or places in the classified

service, except those mentioned in Section 10—1—17 are subject to examination, which shall be public, competitive, and open to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character. ***" (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—7, formerly Ill. Rev. Stat. 1943, ch. 24½, par. 44.)

"Except as hereinafter provided in this section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. ***" (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18, formerly Ill. Rev. Stat. 1943, ch. 24½, par. 51.)

As the appellate court observed, the interpretation and construction of these provisions is governed by the rule that the intention of the legislature should be ascertained and given effect. This court has stated: "The legislative intent should be sought primarily from the language used in the statute. Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted by the legislature. [Citations.] It is never proper for a court to depart from plain language by reading into a statute exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. [Citations.] " *Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84.

Section 10—1—5, cited above, shows a legislative intent that municipal civil service commissions were to have the power to make rules for removals, as the statute puts it, of employees in accordance with the provisions of division 1. (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—5.) Section 10—1—7 expressly calls for the providing of limitations as to residence, and other factors, upon those who would take competitive examinations for appointment in the classified service. (Ill. Rev. Stat. 1975, ch. 24,

par. 10—1—7.) Section 10—1—18 provides against the removal of a classified officer or employee who is appointed under the rules and after examination "except for cause upon written charges and after an opportunity to be heard in his own defense." Ill. Rev. Stat. 1975, ch. 24, par. 10—1—18.

We consider that the commission has the authority to regard an employee's moving his residence from the city of Harvey as "cause" for discharge. In *Kammann v. City of Chicago* (1906), 222 Ill. 63, 65-66, this court in construing a predecessor to section 10—1—18, stated: "The statute is silent as to what constitutes 'cause.' Manifestly the right to determine that question is left with the civil service commission ***. *Joyce v. City of Chicago,* 216 Ill. 466." The position that the determination of "cause" is for the commission has been repeatedly recognized. (*Klafter v. State Board of Examiners* (1913), 259 Ill. 15, 21; *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360; *Senese v. Civil Service Com.* (1967), 88 Ill. App. 2d 172, 175; *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 213; *Bruno v. Civil Service Com.* (1962), 38 Ill. App. 2d 100, 108-09; *Drury v. Hurley* (1949), 339 Ill. App. 33, 39, 41.) Of course, the commission must act in a manner not arbitrary or unreasonable in determining what constitutes "cause." *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360; *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 213; *Bruno v. Civil Service Com.* (1962), 38 Ill. App. 2d 100, 109; *Drury v. Hurley* (1949), 339 Ill. App. 33, 42. See *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 30-31.

The legislature has made it clear that residence, as well as age, health, habits and moral character, may be an employment qualification of applicants for civil service employment. We cannot say that the commission, in promulgating its rule that "Removal from the City of

Harvey shall be cause for the discharge of any person in the classified service ***" (Rules of the Civil Service Commission of the City of Harvey, Illinois, Rule VI, sec. 4), acted unreasonably or arbitrarily.

For the reasons given, the judgment of the appellate court is reversed, the judgment of the circuit court of Cook County is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*

MR. JUSTICE CLARK, dissenting:

I do not believe the Civil Service Commission of the city of Harvey has the statutory authority to require residency of its classified service employees. I therefore dissent, and do so for the reasons stated in the appellate court decision. 54 Ill. App. 3d 21, 23-24.

Like the plaintiffs, I do not dispute the constitutionality of a residency requirement for civil servants. Nor do I dispute the prerogative of Harvey to enact such a requirement. There are sound policy reasons for it. My disagreement with the majority is that there has been an improper delegation of this responsibility to a statutory creature with a very limited competence. There is no presumption in favor of its regulations. A municipal civil service commission "must find in the statute its warrant for any authority claimed." *People ex rel. Hurley v. Graber* (1950), 405 Ill. 331, 343. Accord, *Boner v. Drazek* (1973), 55 Ill. 2d 279, 288. See *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551.

I see nothing in the Commission's enabling statute (Ill. Rev. Stat. 1975, ch. 24, par. 10—1—1 *et seq.*) which might reasonably provide the Commission with the authority to promulgate the residency requirement. The majority, by

reading together sections 10—1—5, 10—1—7 and 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 1—1—1 *et seq.*), concludes the Commission had specific authority to provide for a residency requirement. Section 10—1—5 authorizes the Commission to make rules for examinations, appointments and removals. Section 10—1—7 permits "specified limitations as to residence" for "*applicants* for offices or places in the classified service" (emphasis added). Section 10—1—18 provides that "no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged *** except for cause ***." There is nothing else the majority points to in article 10, division 1 (Ill. Rev. Stat. 1975, ch. 24, pars. 10—1—1 to 10—1—48) to support its position.

Section 10—1—7's reference to residency limitation is quite clearly a reference to applicants only and not to persons in classified service. As the appellate court pointed out, controverting the majority's reasoning "is the provision in section 10—1—18 of the Code that a person in classified service may be removed only for cause shown, and the further provisions in that section relating to mandatory retirement of firemen and policemen upon reaching an age prescribed by statute or municipal ordinance, in which situation the commission's role is simply to oversee the retirement or discharge of that person. Since the legislature granted to the civil service commissions authority to deal with the question of the age of applicants for classified positions, but withheld such authority with regard to removal, it cannot be reasonably inferred that the grant of authority to the commissions to deal with the question of residency of applicants for such positions constituted also a grant of authority to prescribe residency requirements as a condition of continued classified service. No presumption of jurisdiction obtains in favor of a civil service commission (*People ex rel. Hurley v. Graber*), and

no reasonable inference may be made from the pertinent portions of the Illinois Municipal Code upon which to predicate a conclusion that the legislature intended civil service commissions to adopt rules and regulations relating to residency as a cause for removal from classified service." (54 Ill. App. 3d 21, 24.) For these reasons, I believe the appellate court decision should have been affirmed.