THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT J. BEARDSLEY, Defendant-Appellant.

Second District   No. 2—85—0030

Opinion filed December 30, 1985.

Kim A. Lewis and Thomas W. Gooch III, both of Wauconda, and Daniel A. Mengeling, of Johnson, Mengeling & Colletti, Ltd., of Woodstock, for appellant.

Theodore Floro, State's Attorney, of Woodstock (William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Robert Beardsley, was charged with the offenses of eavesdropping (Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a)), and speeding (Ill. Rev. Stat. 1983, ch. 95½, par. 11—601(b)). At a jury trial defendant was found guilty of both charges. At a subsequent sentencing hearing defendant received a sentence of 12 months' probation with 10 hours of public service and a fine of $500 for eavesdropping. Additionally, the court imposed a $75 fine for the speeding offense.

In this court defendant contends: (1) that he was not properly charged with the offense of eavesdropping; (2) that the trial court erred in permitting acts of alleged prosecutorial misconduct during the State's cross-examination of defendant; and (3) that the trial court erred in refusing to order the State to file a verified complaint for the speeding offense.

Prior to trial, defendant, who represented himself through all the proceedings, filed innumerable motions (more than three dozen). At each pretrial hearing the court advised defendant that he was entitled to counsel and that counsel could be appointed. On every occasion defendant explained that he was not representing himself but that he had not relinquished his right to choice of counsel. The record reflects that defendant refused the services of the public defender, as he was an officer of the court, and that defendant's choice of counsel was a nonlegal representative.

At one of the pretrial hearings, defendant presented a motion for a verified complaint. The court informed defendant that it would not entertain the motion, as the court was only going to hear motions at that time relating to the felony eavesdropping charge. Defendant did not object to this procedure, stating, "All right."

At trial defendant again appeared *pro se*. The relevant testimony indicated that on January 7, 1984, defendant was stopped by Deputy Ronald Page of the McHenry County sheriff's department for travel-

ing 67 miles per hour in a 55-mile-per hour zone. At the time of the stop, the officer advised defendant of the speeding violation and asked to see defendant's driver's license. Defendant demanded to speak with counsel. The officer again requested defendant's driver's license, but defendant did not produce it. When the officer asked defendant his name, defendant again replied that he wanted to speak with counsel.

As Deputy Page stood by defendant's car, he noticed that defendant was holding a microphone in his hand. The officer requested that defendant stop recording any conversation, as the officer had not given defendant consent to make a recording and, therefore, to do so was illegal. Defendant responded that it was legal as long as he, the defendant, consented to the recording. The deputy disagreed and informed defendant that he could possibly be charged with eavesdropping.

After defendant again refused to produce his driver's license, the officer asked defendant to get out of his car. As defendant exited his car, he produced a small tape recorder which appeared to be operating, as the red recording light was lit. Later, it would be revealed that although the light was lit, the recorder was not operating because the microphone was not activated. This tape recorder remained in defendant's possession until defendant was later placed in a cell at the county jail.

After having asked defendant several times for defendant's driver's license, Deputy Page placed defendant in the rear seat of his squad car and then radioed his supervisor, Sergeant Hunt, to meet the deputy at the scene of the traffic stop. Upon Sergeant Hunt's arrival, the deputy informed him of the situation. Hunt tried to get defendant to turn over his driver's license, but defendant refused until he spoke with counsel. The officers arranged for the towing of defendant's car since defendant was under arrest for speeding and for failure to produce a driver's license. While waiting for the tow truck, the officers sat in the front seat of Deputy Page's squad car and conversed. As they spoke, defendant recorded their conversation. According to the officers, neither one of them gave defendant his consent to record their conversation. Deputy Page indicated that he did not know defendant was taping their conversation.

After the tow truck had arrived at the scene, Deputy Page transported defendant to the county jail.

During the State's cross-examination of the defendant, the prosecutor questioned defendant regarding his repeated observations of both the prosecutor and Deputy Page during their courtroom appearances in other cases prior to defendant's trial. Defendant tendered no

objections to this line of questioning. On the following day defendant made a motion to strike these references, arguing that they were irrelevant and immaterial. The State contended that the questions were proper because they went to the bias, interests, and motives of the defendant. The court granted defendant's motion with regard to these references, but denied that part of defendant's motion which referred to defendant's testimony regarding his refusal to answer the officers' questions after his arrest, since these questions went primarily to the defendant's identity.

During defendant's trial, the State maintained that defendant was guilty of eavesdropping at the time he recorded Sergeant Hunt's and Deputy Page's conversation in the squad car without their consent. On the other hand, defendant contended that he participated in the conversation between Page and Hunt and, therefore, no reasonable expectation of privacy in the conversation existed.

The jury found defendant guilty of both eavesdropping and speeding. At the sentencing hearing the court imposed fines of $75 for speeding and $500 for eavesdropping and sentenced defendant to 10 days public service work and 12 months' probation for the eavesdropping offense. This appeal followed. We affirm.

■ Defendant first contends that he was improperly charged with eavesdropping because the conversation he recorded in Deputy Page's squad car was not private, or "secret," as defendant was a part of that conversation. Additionally, defendant claims that the eavesdropping statute does not apply to conversations of police officers uttered in the performance of their public functions.

Defendant resorts to the common law definition of the offense of eavesdropping and to the common meaning of the term to emphasize that eavesdropping can only occur when parties intend their conversations to be "secret." The State, on the other hand, argues that these extrinsic means of construing the eavesdropping statute are unnecessary because the language of the statute is clear and does not state that a conversation must be intended to be "secret" for eavesdropping to occur.

In construing a statute, the intent of the legislature should be ascertained and given effect. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674.) Legislative intent is ascertained primarily from a consideration of the statute's language. (*Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363, 389 N.E.2d 151.) Where the language is clear and unambiguous it will be given effect without resorting to other aids for construction. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174; *People v. Robinson*

(1982), 89 Ill. 2d 469, 475-76, 433 N.E.2d 674.) A court should never depart from the plain language of a statute by reading into the statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent. *Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363, 389 N.E.2d 151.

The relevant portion of the eavesdropping statute, at issue here, stated that a person commits eavesdropping when he "[u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation ***." (Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a)(1).) The language of the statute is clear. Eavesdropping occurs when one records any part of a conversation without the consent of all the parties to the conversation. No mention is made that the conversation must be intended to be "secret" or that the conversations of police officers should be excluded.

Defendant relies on this court's interpretation of the eavesdropping statute in *People v. Klingenberg* (1975), 34 Ill. App. 3d 705, 339 N.E.2d 456, to argue that eavesdropping occurs only when a conversation is intended by the declarants to be private. Indeed, this court did conclude in *Klingenberg* that eavesdropping is not merely the listening to or recording of any oral communication but the interception of any communication intended by the declarant to be private. 34 Ill. App. 3d 705, 708, 339 N.E.2d 456.

■ Nevertheless, we believe defendant has misinterpreted what constitutes a private conversation. An expectation of privacy in a conversation must be determined on a factual analysis of each conversation. (*McDonald's Corp. v. Levine* (1982), 108 Ill. App. 3d 732, 741, 439 N.E.2d 475; *Cassidy v. American Broadcasting Cos.* (1978), 60 Ill. App. 3d 831, 377 N.E.2d 126.) Here, regardless of defendant's participation in the conversation, the conversation was intended to be private. This was evidenced by Deputy Page's explicit statement to defendant that the deputy did not consent to the recording of any conversation involving him. Under the clear language of the statute, eavesdropping occurs unless *all* parties consent to the recording of a conversation. If a party does not consent, then it is obvious that he intended the conversation to be private.

Defendant argues that Deputy Page and Sergeant Hunt impliedly consented to the recording of their conversation because they knew defendant had the tape recorder with him in the back seat of the squad car and, yet, they did not physically remove it from his possession so he could not record their conversation, nor did they verbally stop him by warning him not to record their conversation. Further,

defendant maintains that the officers knew the recorder was operating and, therefore, their acquiescence to the recording of their conversation constituted consent for the purpose of the eavesdropping statute. *People v. Ardella* (1971), 49 Ill. 2d 517, 522, 276 N.E.2d 302.

The evidence, however, showed that the officers did not know defendant was recording their conversation. From their position in the front seat of the squad car it would have been difficult to determine if the tape recorder was recording. Although defendant asserted that the officers would be able to tell if the recorder was on by virtue of the fact that the small red light on the recorder was lit at the time he was in the back seat of the car, this assertion is ill-founded. The light is extremely tiny and would not be seen unless the portion of the recorder containing the light was directly facing the officers when, and if, they turned around in their seats to talk to defendant. Moreover, as Deputy Page pointed out in his testimony, the illumination of the red light does not mean the recorder is recording. The light illuminates as soon as the small microphone is plugged into the tape recorder and the record button is pushed down. However, the machine does not record unless the remote switch on the hand microphone is switched on. In both situations, the red light is activated.

Although Sergeant Hunt testified the neither he nor Deputy Page attempted to remove the tape recorder from defendant's possession, there was no reason to do so since, as Deputy Page testified, neither officer knew defendant was recording their conversation. Deputy Page stated he could not advise defendant to turn off the recorder since he did not know it was on. Furthermore, since Deputy Page had told defendant right from the moment of his traffic stop of defendant that the officer had not given his consent to the recording of any conversations, the deputy was not obligated under the statute to continue to remind defendant not to make any recordings. Also, Sergeant Hunt testified that he did not express his consent to the recording of his conversation.

The privacy of the conversation in question was established at the time Deputy Page announced that he did not consent to the recording of any conversation involving him. At that point, the deputy made his intention known that his conversations were of a private nature. In our view, whether or not the conversation was meant to be secret is irrelevant.

Likewise, the fact that the conversation included communications by police officers during the performance of their public functions is inconsequential under the circumstances of this case. Although at first glance, it would appear that there is merit to defendant's argument

that police officers, as public officials, do not have a right to privacy in performance of their public duties, we believe this reasoning is inapplicable in situations such as the present case. The recording of a routine traffic stop and arrest of a motorist does not constitute a situation where the privilege of public report or publication concerning the performance of an officer's duties exist. *Cf., Cassidy v. American Broadcasting Cos., Inc.* (1978), 60 Ill. App. 3d 831, 377 N.E.2d 126.

Moreover, the permitting of recordings by private citizens of routine stop and arrest situations could lead to the recording of conversations designed to be used out of context against the officer who has been recorded and for the benefit of the one recording to escape punishment for his offense. Further, as the State points out, the committee comments to the eavesdropping statute indicate that the statute is directed against the electronic intrusion into any conversation and that it is intended to prohibit eavesdropping with electronic devices by *private individuals.* Also, the statute sets forth no exceptions regarding the recording of conversations of police officers nor should such a limitation, in our opinion, be read into the statute.

■ The prime consideration in determining if defendant had committed the offense of eavesdropping remains to be whether defendant had the consent of all parties involved to the recording of any part or all of their conversation. The evidence clearly established that Deputy Page immediately expressed his lack of consent to defendant's recording upon seeing the microphone in defendant's hand at the time of the traffic stop and that the deputy never changed his position. Under the language of the statute, defendant was properly charged with the offense of eavesdropping and the evidence supported his conviction.

■ Next, defendant contends that the State's line of questioning during its cross-examination of him was outside the scope of direct and aimed at prejudicing him. Defendant maintains that because he appeared *pro se,* the court had a duty to protect him from this prejudice brought about through the misconduct of the prosecutor.

Defendant ignores, however, that he elected to appear *pro se,* even though the record discloses that the court made innumerable offers before trial and at the time of trial to provide counsel for defendant. When a defendant chooses to represent himself, he assumes responsibility for conducting his own defense (*People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 650, 378 N.E.2d 1200), and he is not entitled to favored treatment or special consideration because he has made this choice. *People v. Davenport* (1985), 133 Ill. App. 3d 553, 558, 479 N.E.2d 15; *People v. Murphy* (1972), 3 Ill. App. 3d 345, 351, 277 N.E.2d 721.

During the State's cross-examination of the defendant, the State questioned defendant about his personal activities prior to trial, wherein defendant apparently spent time observing the prosecutor and Deputy Page as they participated or appeared in other cases. Additionally, defendant was questioned regarding his taking of photographs of Deputy Page at the McHenry County Fair. Defendant contends that this line of questioning was designed to imply that his observations were criminal in nature, even though courtrooms are open to the public, and to prejudice the jury against defendant. According to defendant, the questioning bore no relevance to the charge of eavesdropping.

On the other hand, the State argues that the prejudice, if any, was cured when the court granted four of five sections of defendant's motion to strike this portion of his cross-examination. Additionally, the State points out that the court specifically instructed the jurors that they should disregard the questions and answers which pertained to defendant's observations of the prosecutor and Deputy Page in McHenry County courtrooms, his encounters with Deputy Page after defendant's arrest and prior to his trial, and his photographing of Deputy Page at the McHenry County Fair.

■ Nevertheless, defendant maintains that the court's instruction to the jury was ineffective because it was not given immediately after the testimony in question, but the following day when defendant filed his motion. However, the State correctly draws this court's attention to the fact that the delay in the instruction can be attributed solely to this defendant, who elected to represent himself, and not to any failure on the part of the court. Throughout the trial, defendant demonstrated considerable skill in representing himself. He showed no reluctance to assert his rights or to object to other lines of questioning. This court believes that defendant cannot now complain that his failure to make a timely objection to the alleged errors was due to his self-representation and the court's neglect in protecting his rights.

■ Despite the fact that a line of questioning is not objected to at trial, if such questioning constitutes error, a reviewing court will grant relief provided that error was so prejudicial that justice was denied or the jury's verdict resulted from such error. (*People v. Brown* (1982), 104 Ill. App. 3d 1110, 1121, 433 N.E.2d 1081.) Here, the prosecutor erred in cross-examining defendant concerning his pretrial observations of and encounters with the prosecutor and Deputy Page. Nevertheless, the questions were unrelated to the charge against defendant and were unlikely to influence the jury's decision. An evaluation of the evidence in this case together with an examination of the

error, as viewed in the context of the entire record of proceedings, convinces this court that the jury's verdict did not result from this error. Because the jury's verdict of conviction could not reasonably have resulted from such error, we conclude that the error was harmless beyond a reasonable doubt and does not require reversal of defendant's conviction.

■ Additionally, defendant contends that based on *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the prosecutor committed reversible error in questioning defendant regarding his post-arrest silence. *Doyle* held that the constitution forbids the prosecution from using evidence of defendant's post-arrest silence for purposes of impeaching an exculpatory story offered at trial. (426 U.S. 610, 618-19, 49 L. Ed. 91, 98, 96 S. Ct. 2240, 2245.) Here, we do not interpret the prosecutor's references to defendant's silence as designed for impeachment purposes. Moreover, defendant himself introduced evidence of his post-arrest silence when he played, prior to any testimony by him, the tape in question. The tape contained the same information to which the prosecutor referred during her cross-examination of defendant. Additionally, even if defendant had not introduced the tape prior to his testimony, the prosecutor's questions would not have constituted error, as defendant made reference to his post-arrest silence during his own direct testimony. The scope of cross-examination is generally limited to matters brought out on direct examination (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 537, 464 N.E.2d 659), and, thus, in this instance, where defendant in his direct testimony touched on the subject of his silence, cross-examination concerning that silence was proper.

■ That the court considered this particular line of questioning to constitute permissible cross-examination is evidenced in the record by the court's denial of that part of defendant's motion to strike portions of his cross-examination dealing with references to his post-arrest silence. The court specifically noted that defendant's testimony and the tape were replete with references to his silence and that, therefore, the State's references were not improper. What constitutes permissible cross-examination in a criminal proceeding rests within the sound discretion of the trial court (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 538, 464 N.E.2d 659), and its decision will not be disturbed unless there is a clear abuse of that discretion. (*People v. Bracey* (1981), 93 Ill. App. 3d 864, 875, 417 N.E.2d 1029.) Here, no abuse of discretion is shown.

■ A court is not required to assume a protective role toward the defendant who decides to represent himself nor is it invested with

the duty to intervene and assist in the defense. (*People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325.) Under the circumstances of this case, wherein the defendant very ably represented himself and the court displayed great patience with the defendant and allowed him every opportunity to present his case, this court concludes that it was not the duty of the trial court to object to the State's line of questioning during the cross-examination of defendant, but that of the defendant's. Accordingly, it cannot be said that the trial court erred in preventing the acts of alleged prosecutorial misconduct.

■■ Defendant's final contention is that the State was required to file a verified complaint for the offense of speeding upon defendant's motion and that the court improperly dismissed defendant's request. Defendant claims that at a pretrial hearing on April 16, 1984, the trial court specifically set the motion for verified complaint to be heard on April 17. However, the report of proceedings for the April 16 hearing shows only that the court inquired as to how many motions defendant wished to be heard and that the parties appeared merely to set a date for these motions. No discussion appears in the record regarding the nature of the motions nor is there any indication whether or not the court even knew the nature or contents of the motions.

The defendant maintains that when the April 17 hearing convened, the court refused to hear his motion for a verified complaint and later ordered it to be stricken. Defendant misrepresents the happenings at that hearing. When the defendant presented his motion for a verified complaint, the court stated that it would not hear the motion at that time because it was only going to hear those motions of defendant which dealt with the felony eavesdropping charge. That the court wanted to hear only these motions does not seem unreasonable, considering the incredible number of motions related to the felony charge which defendant had filed. It is evident from the court's comments that it considered defendant's plethora of motions to be a delaying tactic. Thus, when defendant refused to present all his felony-related motions on April 17, the court ordered those not heard on that date to be stricken. Although this may have been an improper ruling, that ruling is not at issue here because the ruling, in our opinion, referred only to the felony-related motions. The court did not strike the motion for a verified complaint.

Although defendant appeared *pro se* at the April 17 hearing, as well as at all the other pretrial hearings, his self-representation was in no way a handicap to him. Defendant was extremely well versed

and knowledgeable about both procedural and substantive matters of law. Defendant was never reluctant to object to the court's rulings, nor was he easily put off by the comments of either the court or the State. In light of the fact that no hesitancy existed on his part to assert his rights, defendant's failure to raise his motion for a verified complaint at a later date can be attributed solely to him and not to the court's insistence that motions dealing with the eavesdropping charge were the only ones to be heard at the April 17 hearing.

■■ The State argues that defendant's motion for a verified complaint was insufficient because it did not set forth a specific request for a verified complaint but, rather, only made reference in its opening paragraph to the section of the Code of Criminal Procedure of 1963 which dealt with verified complaints. (Ill. Rev. Stat. 1983, ch. 38, par. 111—3(b).) The opening paragraph of the motion stated that the defendant "demands the Court to order the State to comply with Article 111—3(b), Chapter 38, Illinois Criminal Law and Procedure for 1983 regarding the above captioned traffic cases." The State points out that section 111—3(b) also deals with certain requisites for indictments and informations, as well as requests for verified complaints, and, therefore, defendant's request was insufficient to constitute a formal request for a verified complaint. However, defendant's motion made reference to the "traffic cases." Defendant was charged by a uniform traffic citation with the offense of speeding. Since only one portion of section 111—3(b) deals specifically with charges by traffic tickets and the fact that these tickets serve as complaints unless a defendant requests a verified complaint, it appears evident that defendant's *pro se* motion was sufficient on its face to constitute a request for a verified complaint. Thus, we disagree with the State's contention that defendant's motion for a verified complaint was insufficient.

■■ ■ Nevertheless, the right to be charged by a verified complaint is waived if an accused proceeds to trial without raising an objection. (*People v. Harding* (1966), 34 Ill. 2d 475, 482-83, 216 N.E.2d 147.) When the trial judge indicated at the April 17 hearing that he was only hearing motions relating to the felony eavesdropping charge, defendant responded, "All right." Because defendant acquiesced to the court's decision not to hear defendant's request for a verified complaint at the April 17 hearing and because defendant failed to raise the motion at a later date, he cannot now claim that the court improperly dismissed his motion. The record reveals that at no time after April 17 was a hearing held or a ruling made on defendant's motion for a verified complaint. Unless a motion is brought to the atten-

tion of the court and the court is requested to rule on it, it is not effectively made. (*People v. Gambill* (1980), 91 Ill. App. 3d 302, 303, 414 N.E.2d 859.) A motion is an application to the court which must be brought to the court's attention (*People v. Hornaday* (1948), 400 Ill. 361, 364-65, 81 N.E.2d 168), and merely filing the motion in the office of the clerk, as defendant did here, does not constitute a sufficient application. *People v. Stewart* (1952), 412 Ill. 106, 108, 105 N.E.2d 725, *cert. denied* (1953), 346 U.S. 916, 98 L. Ed. 412, 74 S. Ct. 278.

Thus, by not raising the motion for a verified complaint at some other time prior to trial, defendant waived consideration of his motion by the trial court. Without this consideration and a subsequent ruling, the State was not required to produce a verified complaint.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.