(No. 63079.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT BEARDSLEY, Appellant.

*Opinion filed December 19, 1986.*

SIMON, J., and CLARK, C.J., specially concurring.

Thomas W. Gooch III and Kim A. Lewis, of Thomas W. Gooch & Associates, Ltd., of Wauconda (Daniel A. Mengeling, of Johnson & Mengeling, of Woodstock, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Theodore J. Floro, State's Attorney, of Woodstock (Kenneth R. Boyle, William L. Browers and Marshall Stevens, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in the circuit court of McHenry County, the defendant, Robert Beardsley, was found guilty of the offenses of speeding (Ill. Rev. Stat. 1983, ch. 95½, par. 11—601(b)) and eavesdropping (Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a)). The defendant was fined $75 for speeding, $500 for eavesdropping, and sentenced to 12 months' probation with 10 hours of public service. The appellate court affirmed (139 Ill. App. 3d 819), and we allowed the defendant's petition for leave to appeal (103 Ill. 2d R. 315). Only the eavesdropping conviction is involved in this appeal.

On January 7, 1984, the defendant was stopped by Deputy Ronald Page of the McHenry County sheriff's department for traveling 67 miles per hour in a 55-mile-per-hour zone. Deputy Page advised the defendant of the speeding violation and requested his driver's license. The defendant, however, demanded to speak with counsel. The officer again requested the defendant's driver's license, but the defendant refused to produce it. The officer then asked the defendant his name, but the defendant reiterated his demand to speak with counsel.

As Deputy Page stood by the defendant's automobile, he noticed that the defendant was holding a microphone

in his left hand approximately six inches below the door panel of the vehicle. The officer asked the defendant to stop recording any conversation, as the officer had not given the defendant consent to make a recording. The defendant, however, responded that it was legal as long as he, the defendant, consented to the recording. The officer disagreed and informed the defendant that he could possibly be charged with eavesdropping. After the defendant again refused to produce his driver's license, Deputy Page asked the defendant to get out of his vehicle. As he was doing so, he held a small tape recorder which appeared to be operating, as the red recording light was lit. (Although the light was lit, it was revealed at trial that the recorder was not operating because the microphone was not activated.) After performing a custodial search of the defendant's person, the officer placed the defendant in the rear seat of his squad car.

Once in the squad car, Deputy Page asked the defendant several times for his driver's license, which requests were refused. The officer then radioed his supervisor, Sergeant Hunt, to meet him at the scene of the traffic stop. The deputy informed Sergeant Hunt of the situation when he arrived. Hunt, who knew the defendant, attempted to persuade him to turn over his driver's license. The defendant, after again refusing until he could speak with counsel, was placed under arrest for speeding and for failing to produce a driver's license. The officers then arranged for the towing of the defendant's car. While waiting for the tow truck, the officers sat in the front seat of Deputy Page's squad car and conversed. As they spoke, the defendant recorded their conversation. According to the officers' trial testimony, neither one of them gave the defendant his consent to record their conversation. Both officers also indicated that they were unaware that the defendant was taping their conversation. After the tow truck arrived at the scene, Deputy Page

transported the defendant to the county jail. The tape recorder remained in the defendant's possession until the defendant was later placed in a cell.

The jury found the defendant guilty of both eavesdropping and speeding, and the court then imposed the sentences above indicated. On appeal, the defendant contended that he participated in the conversation between Deputy Page and Sergeant Hunt and, therefore, he was improperly charged with eavesdropping because no reasonable expectation of privacy in the conversation existed. The appellate court, however, disagreed. The appellate court concluded that under the plain and clear language of the statute the defendant was properly charged with the offense of eavesdropping and that the evidence supported his conviction. 139 Ill. App. 3d 819, 823-26.

The sole issue raised by the defendant in this court is whether his conduct in recording the conversation between Deputy Page and Sergeant Hunt constituted "eavesdropping" within the meaning of section 14—2 of the Criminal Code of 1961, which provides in relevant part:

"A person commits eavesdropping when he:
(a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation or (2) with the consent of any one party to such conversation and in accordance with Article 108A of the 'Code of Criminal Procedure of 1963', approved August 14, 1963, as amended." (Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a).)

An eavesdropping device is defined as "any device capable of being used to hear or record oral conversation." Ill. Rev. Stat. 1983, ch. 38, par 14—1(a).

The defendant argues in this court that he was improperly charged with eavesdropping because the conversation he recorded in Deputy Page's squad car was

not "private" or "secret," as the defendant was a part of that conversation. The defendant resorts to the common law definition of the offense of eavesdropping and to the common meaning of the term to emphasize that eavesdropping can occur only when parties intend their conversations to be secret or private. The defendant also argues that Deputy Page and Sergeant Hunt impliedly consented to the recording of their conversation. The defendant maintains that the officers knew the defendant had the tape recorder with him in the back seat of the squad car and, yet, they neither physically removed it from his possession nor verbally stopped the defendant by warning him not to record their conversation. Therefore, their acquiescence to the recording of their conversation constituted consent for the purpose of the eavesdropping statute.

The State, in response, resorts to the plain language of the statute and to principles of statutory construction. Because there is no language in the statute that the conversations must be intended to be private or secret, eavesdropping occurs when one records any part of a conversation without the consent of *all* the parties to the conversation. Hence, the State argues, the defendant was guilty of eavesdropping at the time he recorded Sergeant Hunt's and Deputy Page's conversation in the squad car without their consent.

The defendant relies on the court's interpretation of the eavesdropping statute in *People v. Klingenberg* (1975), 34 Ill. App. 3d 705, to support his position that eavesdropping occurs only when a conversation is intended by the declarant to be private. In that case, the defendant was arrested and charged with driving while under the influence of intoxicating liquor. While in custody, the defendant was requested to perform certain customary physical acts intended to determine the extent of his coordination. Pursuant to a prior written re-

quest of the State's Attorney that all such interrogations be videotaped, an audio-visual recording was made of the defendant's responses and his performance of the coordination tasks. Upon the defendant's motion, the circuit court suppressed the audio portion of the recording on the theory that it was made in violation of the eavesdropping statute. The appellate court reversed and held that the recording of the defendant's voice during the in-custodial interrogation was not "eavesdropping" within the meaning of the statute. In determining whether the recording of the defendant's responses constituted eavesdropping, the appellate court examined whether the legislature intended to protect this type of communication from interception and stated:

"The Committee Comments on the Illinois eavesdropping statute state that, 'The reason for this legislation has, of course, been to protect the privacy of the individual, ***.' (Committee Comments, Ill. Ann. Stat. ch. 38, art. 14, at 581 (Smith-Hurd 1972).) This stated purpose of the eavesdropping statute conforms with the generally accepted definition of eavesdropping, which is 'to listen secretly to what is said in private.' Further, this definition of the term finds support in the common law definition of eavesdropping, which was to stand under the eaves of another home to enable one to hear what was said within the privacy of the home. We also note that throughout the A.B.A. Standards Relating to the Administration of Criminal Justice, Electronic Surveillance, the phrase, 'oral communications uttered in private' appears, and the recording of oral communications not within the framework of privacy has been excluded." (34 Ill. App. 3d 705, 707-08.)

After examining these sources, the appellate court concluded:

"[T]he framers of the statute intended the term 'eavesdropping' to refer to the listening to or recording of those oral statements intended by the declarant to be of a private nature. Eavesdropping is not merely the listening

to or recording of any oral communication. Such an over-inclusive definition of the term was not, in our opinion, intended by the General Assembly. Thus, *we conclude that the statute was enacted to protect the individual from the interception of communication intended to be private.*" (Emphasis added.) (34 Ill. App. 3d 705, 708.)

The appellate court in *Klingenberg* emphasized that the recording of the defendant's responses to the police interrogation was not a recording made during custody of a defendant of communications which the defendant intended to keep from the hearing of law-enforcement officials. Rather, the statements of the defendant were made directly to the sheriff's deputies and were intended by the defendant to be heard by the deputies. Under these circumstances, the appellate court reasoned, the defendant had no expectation of privacy at the time of the audio-visual recording, and there was no interception of a private communication. Thus, the appellate court held that there was no eavesdropping. See also *Cassidy v. American Broadcasting Cos.* (1978), 60 Ill. App. 3d 831.

We agree with the defendant that the eavesdropping statute was intended to protect individuals from the *surreptitious* monitoring of their conversations by the use of eavesdropping devices. As *Klingenberg* and *Cassidy* demonstrate, the statute is based on the assumption that if the parties to a conversation act under circumstances which entitle them to believe that the conversation is private and cannot be heard by others who are acting in a lawful manner, then they should be protected in their privacy.

We note that our interpretation of eavesdropping is consistent with article III of the Omnibus Crime Control & Safe Streets Act of 1968 (18 U.S.C. secs. 2510 through 2520 (1982)), which imposes liability on any person who "willfully intercepts, endeavors to intercept, or

procures any other person to intercept or endeavor to intercept, any wire or oral communication." (18 U.S.C. sec. 2511(a) (1982).) An "oral communication" is defined as a "communication uttered by *a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.*" (Emphasis added.) (18 U.S.C. sec. 2510(2) (1982).) "Interception" means "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." (18 U.S.C. sec. 2510(4) (1982).) The Act also provides for an exception to the prohibition against wilful interception of a wire or oral communication for a person acting under color of law, where such person is a party to the communication *or* one of the parties to the communication has given prior consent to such interception. 18 U.S.C. sec. 2511(2)(c) (1982).

Applying the above interpretation of eavesdropping, we find that no violation of the eavesdropping statute occurred when the defendant recorded the conversation between Deputy Page and Sergeant Hunt in Deputy Page's squad car. The primary factor in determining whether the defendant in this case committed the offense of eavesdropping is not, as the appellate court reasoned, whether all of the parties consented to the recording of the conversation. Rather, it is whether the officers/declarants intended their conversation to be of a private nature under circumstances justifying such expectation. The evidence at trial established that, while waiting for the tow truck, Deputy Page and Sergeant Hunt sat in the front seat of Deputy Page's squad car and conversed. As they spoke, the defendant, who was sitting in the rear seat of the squad car, recorded their conversation. According to the officers' testimony, neither one of them gave the defendant his consent to record their conversation. The officers also indicated that

they did not know that the defendant was taping their conversation. However, it seems logical that if the officers intended their conversation to be entirely private, then they would have left the squad car instead of carrying on their conversation in the defendant's presence. Thus, under the circumstances, the officers cannot be heard to allege that they intended their conversation to be private. Because there was no surreptitious interception of a communication intended by the declarants to be private, secret, or confidential, under circumstances justifying such expectation, there was no violation of the eavesdropping statute. *Cassidy v. American Broadcasting Cos.* (1978), 60 Ill. App. 3d 831; *People v. Klingenberg* (1975), 34 Ill. App. 3d 705.

Our conclusion that no eavesdropping, as defined by statute, occurred in this case is fortified by the reasoning of the Supreme Court in *Lopez v. United States* (1963), 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381. In that case, the defendant made an unsolicited offer of money to a revenue agent for the purpose of obtaining his assistance in concealing certain tax liability. The agent's superiors equipped him with a pocket wire recorder, which was then used to record the defendant's inculpatory statements at a subsequent meeting with the agent. The defendant's pretrial motion to suppress the recording was denied, and both the recording and the agent's testimony relating to the conversations were admitted into evidence. On appeal, the defendant contended that the recording of the conversation was obtained in violation of his rights under the fourth amendment. A majority of the court held that there had been no fourth amendment violation such as would render the evidence inadmissible. The majority also noted that "eavesdropping," in its proper sense, was not involved in the case. The majority concluded that the government did not use the electronic device to listen in on

conversations it could not otherwise have heard, but only to obtain the most reliable evidence possible of a conversation in which the government's own agent was a participant and which that agent was fully entitled to disclose. (*Lopez v. United States* (1963), 373 U.S. 427, 439, 10 L. Ed. 2d 462, 470, 83 S. Ct. 1381, 1388.) The majority also emphasized that the risk the defendant took in offering a bribe to the agent fairly included the risk that the offer would be accurately reproduced in court. The defendant therefore had no constitutional right to rely on possible flaws in the agent's memory or to challenge his credibility without being beset by corroborating evidence such as a recording which was not susceptible of impeachment. *Lopez v. United States* (1963), 373 U.S. 427, 439, 10 L. Ed. 2d 462, 471, 83 S. Ct. 1381, 1388.

We emphasize that we are not holding that the limitations on one's conduct imposed by section 14—2 of our eavesdropping statute are coextensive with those imposed on governmental action by the fourth amendment (U.S. Const., amend. IV), or by the provisions of section 6 of article I of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 6). However, the reasoning of *Lopez* is helpful. It may not be appropriate to phrase the protection of the statute solely in terms of "expectation of privacy" without a clear understanding of the dimensions of that term. Under the rationale of *Lopez*, clearly our eavesdropping statute should not prohibit the recording of a conversation by a party to that conversation *or* one known by the parties thereto to be present. The rationale of the Federal cases relied upon by the majority in *Lopez* is that there would be no limitation on a person insofar as repeating or testifying as to what he heard. By recording the conversation, the agent in *Lopez* was simply preserving a more accurate account of what he had heard. Hence, there was no invasion of an "expectation of privacy" and there was no surreptitious intercep-

tion by means of an eavesdropping device of a private conversation.

In *People v. Kurth* (1966), 34 Ill. 2d 387, this court held that an unknown surreptitious recording of a conversation could not be admitted into evidence against any party who had not consented to the recording or transmission of his conversation. In reaching its holding, this court reasoned:

> "Thus, for example, in a four-party conversation three of the parties may know that the conversation is being recorded and may consent to the recording while the fourth party may be unaware of this fact. As to 'any party' who has consented the recorded conversations are admissible, but as to the one party who has not consented, the recording is inadmissible." (34 Ill. 2d 387, 395.)

The question of whether the conduct in *Kurth* constituted a crime, however, was not involved in that case. Section 14—2(a) of the eavesdropping statute construed in *Kurth* at that time provided that a person commits eavesdropping when he "uses an eavesdropping device to hear or record all or any part of any oral conversation without the consent of *any* party thereto." (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 38, par. 14—2(a).) The concurring opinions of Justices Schaefer and Underwood disagreed with the majority's holding that "any party" as used in the statute required the consent of all parties before the recorded conversation would be admissible against all of the participants in the conversation. Justice Schaefer noted the accepted definition of eavesdropping as " 'stand[ing] under the eaves, or near the windows of a house in order to overhear what is said within doors; hence, [the listening] secretly to a private conversation of others.' Webster's New International Dictionary (2d ed.)." (*People v. Kurth* (1966), 34 Ill. 2d 387, 397 (Schaefer, J., concurring).) (For a discussion critical of the majority's holding in *Kurth* see Henzi, *Electronic*

*Eavesdropping*, 56 Ill. B.J. 938 (1968).) Section 14—2(a) of the eavesdropping statute has been subsequently amended and in its present form requires that the hearing or recording of any conversation must be with "the consent of *all* of the parties to such conversation." Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a)(1).

The amended version seems to bring the statute into conformity with the holding in *Kurth* and to clarify a problem that both Justice Schaefer and Justice Underwood referred to in their concurring opinions, that is, whether a crime has been committed if the recording of a conversation is consented to by some but not all parties thereto. The amendment, however, does not alter the basic concept of the conduct at which the statute is aimed. That is, a surreptitious interception of a private conversation—eavesdropping in its commonly understood sense as urged by Justice Schaefer in *Kurth* and as defined by Webster's New International Dictionary (2d ed. 1934). In essence, the conduct at which the statute is aimed is that of listening in secret to what is said in private.

Here, the contents of the conversation were plainly revealed to the defendant, who was sitting in the backseat of Deputy Page's squad car. Because the defendant witnessed the responses of the officers, he would have been competent to testify thereto and to describe the same. Hence, the defendant's recording of the officers' conversations was not to obtain information which was otherwise inaccessible and, under the reasoning set forth in *Lopez*, if the fourth amendment were applicable, the officers in this case could not claim a constitutionally protected expectation of privacy in their conversation. The defendant in the present case could have made notes or transcribed the conversation between Deputy Page and Sergeant Hunt and testified concerning it. Instead of immediately transcribing the conversation, how-

ever, the defendant simultaneously recorded it with electronic equipment. Accordingly, there was no listening secretly to what was said in private, no surreptitious interception of a private conversation, and no violation of the statutory prohibition against eavesdropping.

The holding in *Kurth* is overruled to the extent that it may be construed to require the finding that the defendant in this case was in violation of section 14—2(a) of our eavesdropping statute. We emphasize, however, that our holding in this case should not be construed as holding that the same result would necessarily prevail if the defendant here would have been equipped with a transmitter instead of a recorder and, therefore, the conversation by the officers would, by this means, have been overheard or intercepted by another.

Our conclusion that there was no violation of the eavesdropping statute makes it unnecessary to address the defendant's remaining contention that Deputy Page and Sergeant Hunt impliedly consented to the recording of their conversation.

For these reasons, the judgments of the appellate and circuit courts are reversed with respect to the conviction for eavesdropping. The speeding conviction has not been questioned in this court, and that portion of the appellate court judgment remains unaffected.

*Judgments reversed*
*in part.*

JUSTICE SIMON, specially concurring:

The legislative intent is clear in both the language of the statute and the history of its amendment: it is unlawful to record a conversation using an "eavesdropping device" without the "consent of *all* of the parties to such conversation." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a)(1).) The majority's construction ignores the amendatory language which replaced

the word *"any"* with the word *"all"*; it also renders meaningless two other portions of the statute, while at the same time it fails to enforce the plain intent of the law.

In *People v. Kurth* (1966), 34 Ill. 2d 387, the court, having decided that the defendants were entitled to a new trial for inadequate *voir dire* in the original proceeding, considered the admissibility of tape-recorded conversations upon retrial. That evidence consisted of secret recordings made by the State's witness, Robert Smith, of conversations he had with the defendants. Those defendants claimed that Smith's recordings were made in violation of the eavesdropping statute. Recordings made in violation of that law are inadmissible. (See Ill. Rev. Stat. 1983, ch. 38, par. 14—5.) At the time *Kurth* was decided, however, the statute provided that eavesdropping was committed by the act of recording a conversation "without the consent of *any* party thereto." (Emphasis added.) (Ill. Rev. Stat. 1965, ch. 38, par. 14—2(a).) The court ruled that: "As to 'any party' who has consented the recorded conversations are admissible, but as to the one party who has not consented, the recording is inadmissible. This construction carries out the legislative intent and follows the language used by the legislature without the necessity of construing the word 'any' to mean 'all.' " 34 Ill. 2d 387, 395.

The court in *Kurth* therefore ruled that the recordings were inadmissible in defendants' new trial, but of more interest in this case are the concurring opinions of Justices Schaefer and Underwood. Justice Schaefer concurred in the court's conclusion that a new trial was required but would have admitted the recordings in the new trial. As framed by Justice Schaefer, the question was whether Smith had recorded the conversations with the consent of "any party thereto" by reason of Smith having been a party to the conversations and having ob-

viously consented. Justice Schaefer answered the question affirmatively, saying that the eavesdropping statute would have been violated only if the statute which "makes it a crime to record a conversation without the consent of *any* party thereto is to be read to make it a crime to record a conversation without the consent of *all* parties thereto." (Emphasis in original.) (34 Ill. 2d 387, 396-97 (Schaefer, J., concurring).) Justice Underwood agreed, writing in concurrence: "I believe the drafting choice must be viewed as deliberately and intentionally made. So viewed, 'without the consent of any party', to me, leads only to one conclusion, and that is that recorded conversations are admissible against all parties thereto if consented to by any party." 34 Ill. 2d 387, 400 (Underwood, J., concurring).

According to the majority in this case, "our eavesdropping statute should not prohibit the recording of a conversation by a party to that conversation" (115 Ill. 2d at 56), an interpretation consistent with those of Justices Schaefer and Underwood regarding a statute that required the consent of "any" party to the conversation. Thus, the majority has adopted the concurring opinions of Justices Schaefer and Underwood, but the General Assembly has not been persuaded. Since this court's decision in *Kurth*, the legislature has amended the statute to the exclusion of the legal rule proposed by Justices Schaefer and Underwood. The defendant's conduct was culpable under current law unless he had the "consent of *all* of the parties," not just "*any*" one of them. (Emphasis added.) During the General Assembly debate on this amendment, Senator Harris argued in favor of the new language being considered for adoption:

"Well, I think a lot of us are familiar with the circumstance of the past year [the congressional Watergate hearings] that has come to light where electronic eavesdropping occurred which one party, of course, consented

to it, but the others did not, and I think that is a truly reprehensible circumstance. *** [T]he acquiescence or permission of all parties involved[ ] ought to be the public policy of this State." (79th Ill. Gen. Assem., Senate Proceedings, June 25, 1975, at 211.)

*Kurth* made the distinction between "any" and "all" abundantly clear, and "the drafting choice must be viewed as deliberately and intentionally made." *People v. Kurth* (1966), 34 Ill. 2d 387, 400 (Underwood, J., concurring).

Furthermore, the majority's interpretation of the statute has rendered portions of the statute superfluous and has frustrated the intention of our General Assembly as expressed in the language of the statute. Section 14—2(a) of the Criminal Code of 1961 makes it a crime to use an eavesdropping device to hear or record a conversation unless the person using the device "does so (1) with the consent of all of the parties to such conversation *or* (2) with the consent of *any one party to such conversation and in accordance with Article 108A of the 'Code of Criminal Procedure of 1963'* [regarding authorizing court orders issued upon reasonable grounds]." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 14—2(a); *cf. People v. Wright* (1974), 56 Ill. 2d 523, 528-29 ("reasonable grounds" as contemplated by the Code of Criminal Procedure of 1963 has the same substantive meaning as "probable cause" as used in State and Federal constitutional law).) According to its sponsor, Representative Jaffe, the amended law "permits eavesdropping with one party consent *and a court order*." (Emphasis added.) (79th Ill. Gen. Assem., House Proceedings, April 18, 1975, at 24.) This understanding of the proposed legislation was expressed several times in the debates, and it is amply supported by the language of the amended statute which creates greater protections against eavesdropping by law-enforcement officers than

those accorded by the fourth amendment to the United States Constitution as interpreted in *Lopez v. United States* (1963), 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381.

The General Assembly having enacted greater protections against recordings by a single party to a conversation than those recognized in *Lopez*, it is more than a little anomalous that the majority has here declared that "[u]nder the rationale of *Lopez*, clearly our eavesdropping statute should not prohibit the recording of a conversation by a party to that conversation." (115 Ill. 2d at 56.) Pursuant to section 14—2(a)(1), as now interpreted by a majority of this court, a law-enforcement officer can secretly record any conversation to which he is a party without first obtaining an order upon a showing of probable cause. Contrary to the expressed purpose for which the amended law was proposed, such recordings will be admissible in criminal trials as not having been obtained in violation of the eavesdropping statute even though a court order has not been procured. Ill. Rev. Stat. 1983, ch. 38, par. 14—5.

To reach the conclusions it does, the majority reasons that "the eavesdropping statute was intended to protect individuals from the *surreptitious* monitoring of their conversations" by individuals not party to those conversations. (Emphasis in original.) (115 Ill. 2d at 53.) Analysis of the statutory language does not support that observation. In defining an "eavesdropping device," the statute includes "any device capable of being used to hear or record oral conversation * * * [p]rovided, however, that *this definition shall not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, par. 14—1(a).) Since there is nothing surreptitious about the use of hearing aids to restore aural sensation, the proviso would be superfluous to a stat-

ute outlawing only eavesdropping in its traditional, surreptitious sense. Inclusion of the proviso is indicative of the legislative intent to criminalize activity not commonly considered "eavesdropping," as defined in Webster's New International Dictionary 811 (2d ed. 1934). (115 Ill. 2d at 58.) Thus, I submit that in disposing of this appeal in the way it does, the majority misconstrues the current statute by interpreting it to allow any party to a conversation to make a secret recording of it.

Had the defendant made his recording without the officers' knowledge or consent I would say his conviction should be affirmed, but because the facts indicate that the officers gave their consent, I believe that the defendant has not violated the statute in this case. Both officers knew that the defendant had a tape recorder and that he intended to record any conversations within the limited range of his recording equipment. With knowledge of defendant's intent and ability, the officers placed the defendant, handcuffed, in the back of Deputy Page's patrol car and left his recorder on the seat next to him. The officers then proceeded to have their conversation in the front seat of Deputy Page's car, knowing or at least suspecting that their conversation was being recorded. Considering those facts, the defendant's captive state, and the officers' freedom to hold their conversation outside the car, their conduct indicates at least implied consent to the recording of their conversation.

The history of this statute, the requirement for a court order authorizing the recording of conversations with the consent of fewer than all parties, and the hearing-aid proviso all indicate beyond a doubt that the statute is aimed at more than just eavesdropping by persons not party to the conversation. For the reasons I have stated, I agree that the defendant's eavesdropping conviction must be reversed, but because the court's opinion ignores the manifest legislative intent and does damage

to the statutory probable-cause requirement, I do not join it.

CHIEF JUSTICE CLARK joins in this special concurrence.