THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND SIWEK, Defendant-Appellant.

Second District    Nos. 2—95—0668, 2—95—1370 cons.

Opinion filed September 16, 1996.—Rehearing denied November 5, 1996.

8

Edward M. Genson, Marc W. Martin, and Elisha S. Rosenblum, all of Genson, Steinback, Gillespie & Martin, of Chicago, for appellant.

Anthony M. Peccarelli, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Raymond Siwek, appeals his convictions on two counts of possession with intent to distribute cocaine in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1991, ch. 56$^1$/2, par. 1401). Defendant also appeals the denial of his motion for a new trial. We affirm.

## FACTS

The following background is taken from the hearing on defendant's motions to suppress evidence and from his trial. Defendant joined the Chicago police department in 1968. From 1976 to 1981, defendant worked in the gang crimes unit, involved with gangs and narcotics. Later, he was transferred to the organized crime division, where he was involved in investigating and arresting large-scale drug dealers. In 1984, defendant became a detective and worked on narcotics-related homicides. Defendant served two years on a federal homicide drug task force, after which he was transferred to property crimes in 1989. He was working in property crimes up to the time the events at issue in this case occurred.

While employed by the Chicago police department, defendant also served in the National Guard, where he met Brian Marchese. In March 1992, Marchese was arrested and charged with driving on a suspended license. Marchese contacted defendant and asked him for help on that case. Defendant referred Marchese to another detective who enlisted Marchese as a drug informant. Marchese, however, never panned out as an informant for the Chicago police department.

On April 6, 1992, Marchese contacted Larry Wiess and offered to get him drugs. Wiess was an undercover agent for the Du Page Metropolitan Enforcement Group (DUMEG). Wiess and Marchese attempted to complete several transactions during the next month. Although the deals were never completed, Marchese alerted Wiess about the existence of a possible buyer from Chicago who would want a kilogram every week and a half.

Marchese arranged to purchase cocaine from Wiess on May 6, 1992. Before the meeting, Marchese went to defendant's home and obtained $12,500 in cash. Marchese testified that defendant said that $2,500 was his own money, $10,000 was from a friend, for whom he would be purchasing the cocaine, and that $500 was included as his commission for the deal. Marchese promised to return to defendant's home by about 11:30 that morning.

Marchese then called Wiess and told him that he had the money and wanted to buy a half-kilogram of cocaine. When they met, Marchese told Wiess that he would take the cocaine to the person who had provided the money. Marchese handed the money to Wiess. Wiess handed Marchese the cocaine in exchange. Marchese was then arrested by DUMEG agents at about 11 a.m. on May 6, 1992.

The agents took Marchese to the Bloomingdale police department. At about noon, Marchese called defendant and the conversation was recorded. Near the phone was a sign stating that every phone call was recorded. Marchese, who does not read well, testified that he could not and did not read the sign. He stated, however, that he was aware that the conversation would be taped because he learned this from a previous arrest at the station. During the conversation, defendant asked Marchese if he had lost "that," which Marchese took to mean the money, and whether he had been "set-up."

Another DUMEG agent, Robert Guerrieri, testified that he could hear Marchese's end of the conversation. Guerrieri, however, did not realize at that time that the phone call was being recorded, nor did he listen to the recording of the call between Marchese and defendant. Guerrieri apparently did, however, communicate his observations to Wiess.

On May 6, Marchese was told that he was being charged with a super Class X felony which would carry a mandatory minimum prison sentence of 12 years. He was offered consideration, however, if he agreed to cooperate. Marchese identified his money source as a Chicago policeman, but declined to cooperate further. He did not at that time identify defendant.

Marchese was placed in the Du Page County jail. During the afternoon of May 7, he met with Wiess and Guerrieri, agreed to cooperate, and identified defendant as his source of money. After the agents left, Marchese learned from his wife that defendant had called Marchese's home and received the impression that defendant would come and visit him at the jail that night if Marchese did not get in touch with him. Concerned, Marchese called one of the DUMEG agents sometime after 5 p.m.

Wiess contacted one of the Du Page County assistant State's Attorneys for instructions. Shortly after, the assistant informed Wiess that the first assistant State's Attorney had approved an emergency tape recording of the impending call between defendant and Marchese.

Around 7 p.m., Guerrieri, Wiess, and their supervisor, William Simmons, arrived at the Du Page County jail and set up equipment in order to record a call between Marchese and defendant. At about 7:30, Wiess paged defendant and defendant returned the call. The ensuing conversation was recorded. Defendant and Marchese discussed the circumstances of Marchese's arrest, his bond situation, his need for a lawyer, and the need for him to keep quiet. Defendant assured Marchese that he had "calmed down" his "people" by paying them $5,000 from his own pocket.

On May 8, the agents sought a warrant to record any further conversations between defendant and Marchese. The warrant was granted, and the court determined that an emergency existed to excuse the warrantless recording made during the evening of May 7. The warrant allowed calls to be recorded until 6 p.m. on May 17.

Marchese remained in the county jail until May 11, when he was able to make bond. Marchese continued to cooperate with DUMEG, speaking to defendant every day from May 11 to May 13. Each of these conversations was recorded. During the conversations, Marchese and defendant planned to recover the money Marchese had lost due to his arrest by purchasing cocaine from Marchese's supplier. They planned to complete this transaction on May 14, at Marchese's home.

Defendant arrived at Marchese's house on the morning of May 14. Wiess was present, acting as Marchese's supplier. Wiess delivered

458 grams of cocaine to defendant. This transaction was recorded on videotape. Defendant left Marchese's house with a bag containing nine ounces of cocaine. He was arrested as he drove away, and the cocaine was recovered from under the seat of defendant's jeep. At the time of his arrest, defendant said he was working for Chicago, meaning the police. Defendant's jeep was taken to the police department and searched. A briefcase and three bottles labeled "cocaine test set" were recovered.

A search warrant was then executed on defendant's house. In the house, police found a few hundred dollars and another briefcase in defendant's basement. The briefcase contained a sifter/grinder, a tackle box, baggies, Manitol and other cutting agents, and other drug paraphernalia containing cocaine residue. No other narcotics were found in the house. Defendant's work locker was also searched, but no money or drugs were found. Police also executed a search warrant on defendant's safe-deposit box with the result that no narcotics or money were found.

Defendant testified on his own behalf and disputed the State's version of the facts. According to defendant, he was involved in narcotics arrests and seizures as part of his responsibilities in the property crimes unit. In February 1992, defendant was involved in a cocaine and stolen property investigation. He used the cocaine testing kit which was found in his jeep on May 14 to test some cocaine he found while executing a search warrant during that investigation. The kit had been issued to him by the Chicago police department.

Early in 1992, Marchese approached defendant for help on a DUI case in Du Page County. Marchese offered his services as a narcotics informant in exchange for the DUI charges being dropped. Defendant passed Marchese on to a Chicago detective who enlisted Marchese as an informant. During March and April, Marchese called defendant a number of times to find out what the detective was doing on his DUI case, but never informed defendant about his drug transactions.

During the course of their relationship, defendant had loaned Marchese money a number of times. As of May 1992, Marchese owed defendant approximately $4,700. At the beginning of May, Marchese asked to borrow $5,000 from defendant to purchase a vehicle and equipment. Defendant agreed to loan Marchese $2,500, which he picked up on May 6, 1992. Defendant had no idea that Marchese was planning to buy cocaine with the money, nor did defendant tell Marchese to buy cocaine for him.

Later that day, Marchese called defendant and told him that he had been arrested. On May 7, at about 6:30 a.m., Marchese again

called defendant. During that call, Marchese told defendant that he had been arrested for possessing a large amount of cocaine and that he had lost $10,000 of someone else's money. He asked defendant for a loan to repay the lost money, but would not tell defendant to whom the money belonged or from whom he had purchased the drugs. Marchese asked defendant for help in working out a deal on the drug case. Defendant told Marchese that he would pretend to be the money source so that Marchese could prove his worth and reliability as an informant to the Du Page County authorities.

Marchese next called defendant on May 11 and told him that his drug supplier still wanted to make a deal. Later that night Marchese paged defendant. They had set up a code at some unspecified time before the May 11 call where, if Marchese paged defendant, it meant that Marchese's drug source was present and might be able to overhear the conversation. This was supposed to help defendant set up Marchese's drug supplier. The two also had conversations on May 12 and 13 concerning the details of the impending deal.

On May 14, 1992, defendant went to Marchese's house, taking his badge, gun, and briefcase. Defendant did not notify any of his superiors that he was going to Bloomingdale to make an undercover buy because he did not intend to make an arrest at that time. Rather, he intended to continue the investigation from the information he and Marchese would be collecting about the drug supplier.

When defendant arrived at Marchese's house, he assumed the role of Marchese's money source. He eventually accepted a package from Wiess, intending to take it and notify his supervisor of his undercover activity. He also intended to tell the detective for whom Marchese was informing that Marchese had made a case.

Defendant left Marchese's house with a package of cocaine and placed it under the front seat of his jeep. As he pulled away from the house, he was surrounded by squad cars and arrested. He informed the arresting officers that he was a Chicago police officer conducting a narcotics investigation.

Defendant explained that the drug-paraphernalia-containing briefcase found in his home was the equipment he received when he worked in the gang and narcotics divisions. The paraphernalia it contained had been seized during various raids, and the officers used it to further subsequent investigations.

The jury found defendant guilty of both counts of possession with intent to deliver cocaine. On May 2, 1995, defendant was sentenced to concurrent 15-year terms on both counts. Defendant appealed his convictions.

On May 22, 1995, defendant filed a motion for a new trial based

on newly discovered evidence. On September 29, 1995, the trial court denied defendant's motion and defendant timely appealed. We granted defendant's subsequent motion to consolidate both appeals.

## DISCUSSION

Defendant raises seven issues on appeal: (1) whether the video of defendant's May 14, 1992, drug transaction should have been suppressed because of lack of statutory authorization to make a secret video recording; (2) whether the May 6, 1992, telephone call from the Bloomingdale police station between Marchese and defendant should have been suppressed for lack of compliance with the requirements of the various Illinois eavesdropping statutes; (3) whether the warrantless recording and transcript of the May 7, 1992, conversation between Marchese and defendant should have been suppressed due to lack of a true emergency; (4) whether the trial court erred in applying the good-faith exception to the search warrant used to search defendant's home; (5) whether the civil forfeiture case against defendant's vehicle and money bars his prosecution under the double jeopardy clauses of the Illinois and United States Constitutions; (6) whether defendant is entitled to a new trial on the grounds of newly discovered evidence; and (7) whether Marchese exercised sufficient dominion and control to possess narcotics in order to hold defendant accountable for his conduct.

## I

Defendant's initial issue on appeal is whether the trial court erred by denying defendant's motion to suppress the videotape recording of the May 14, 1992, meeting. Defendant argues that Illinois law does not authorize electronic video surveillance because the eavesdropping statutes (Ill. Rev. Stat. 1991, ch. 38, pars. 14—1 *et seq.*, 108A—1 *et seq.*, 108B—1 *et seq.*) concern only the interception of oral communications and are silent as to the matter of interception of visual images. Defendant asserts that, because there is no statutory authorization for intercepting visual images, the State is not allowed to intercept the images. Defendant contends that the video surveillance constituted a search and seizure, requiring the application of state and federal constitutional safeguards, particularly the warrant requirement. Therefore, because the State failed to procure a warrant before the videotaping of the May 14 transaction, defendant argues that the video is the fruit of an illegal search and must be suppressed.

As an initial matter, we note that the eavesdropping statute (Ill. Rev. Stat. 1991, ch. 38, par. 14—1 *et seq.* (now codified, as amended, at 720 ILCS 5/14—1 *et seq.* (West 1992))) was amended dur-

ing the pendency of defendant's appeal. The amendment extended the coverage of the eavesdropping statute to all conversations, regardless of whether they were intended to be private. The previous version of the eavesdropping statute, cited above, excluded conversations which a party did not intend to be private. *People v. Herrington*, 163 Ill. 2d 507, 510 (1994); *People v. Beardsley*, 115 Ill. 2d 47, 54-55 (1986). We conclude that the version of the eavesdropping statute cited above was in effect during May 1992 and is applicable to this case. See *People v. Miller*, 255 Ill. App. 3d 577, 583-84 (1994).

■ Defendant's argument fails from the outset, because the videotaping did not constitute a search under the federal or state constitution. "A 'search,' as contemplated by the fourth amendment to the United States Constitution, occurs when an expectation of privacy considered reasonable by society is infringed." *People v. Mannozzi*, 260 Ill. App. 3d 199, 203 (1994). "If an inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the warrant clause of the fourth amendment." *Mannozzi*, 260 Ill. App. 3d at 203.

■ In this case, defendant alleges that the videotaping of the drug transaction constituted an illegal search and seizure and violated the eavesdropping statute. Where consent is given by one party, the other party does not have a legitimate expectation of privacy, and eavesdropping cannot occur. *Herrington*, 163 Ill. 2d at 510; *Beardsley*, 115 Ill. 2d at 53. We find the reasoning in these cases compelling. Here, defendant did not have an expectation of privacy with Marchese. Marchese had consented to allow the videotaping to occur. The police did not obtain a videotape of a transaction that they could not otherwise have observed. See *Herrington*, 163 Ill. 2d at 511 (consenting party to conversation "did not listen to or record a conversation she could not otherwise have heard"). Because defendant, as to his transaction with Marchese, did not have a legitimate expectation of privacy in Marchese's house, and the police did not intrude, there was no search under the fourth amendment. See *Mannozzi*, 260 Ill. App. 3d at 203 (police officer "did not intrude on any expectation of privacy" by securing the defendant's car for removal to the police station, and, "[t]hus, he did not search defendant's car"). Because there was no search, there was no requirement that the police obtain a warrant to videotape. Therefore, there was no constitutional violation associated with the videotape.

Our conclusion is fortified by consideration of *People v. O'Toole*, 226 Ill. App. 3d 974 (1992). There, the police videotaped a conversation between the defendant and a consenting police agent. *O'Toole*, 226 Ill. App. 3d at 979-80. The defendant attempted to suppress the

videotape, and the trial court denied his motion. *O'Toole*, 226 Ill. App. 3d at 981. As an alternate ground for affirmance, the court held that, in view of *Beardsley*, the videotape did not need the support of an eavesdropping order to be admissible. *O'Toole*, 226 Ill. App. 3d at 983. Likewise, here, Marchese was a consenting police agent, and, because there was no intrusion into defendant's privacy, the eavesdropping statute did not apply. Thus, the trial court did not err by denying defendant's motion to suppress the videotape.

■ In light of our resolution of the issue, we need not consider whether videotaping need be judicially authorized, where, as here, there is no search or seizure under the fourth amendment. We also note that in this case the intrusiveness of the electronic visual surveillance is truly minimal. A single transaction was captured on videotape between the State's agents and defendant. The video camera was emplaced within the home of Marchese, a state agent. The defendant visited Marchese's home and had no reasonable expectation of privacy with regard to Wiess or Marchese. Both could, and did, testify about what transpired at Marchese's home on May 14, 1992. The interception of the video images, therefore, represents only a minimally greater intrusion into defendant's privacy than would the duly authorized interception of the oral conversation. Given the minimal nature of the intrusion in this case and that the interception was accomplished without a search, we find that there was no violation of defendant's rights sufficient to warrant the suppression of the videotape of the May 14, 1992, conversation. Accordingly, we hold that the trial court correctly denied defendant's motion to suppress the videotape.

## CONCLUSION

We affirm defendant's convictions of possession with intent to distribute cocaine.

Affirmed.

BOWMAN and DOYLE, JJ., concur.