Nos. 2--95--0668, 2--95--1370 cons.                    

                                                                  

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

                                                                  

THE PEOPLE OF THE STATE               )  Appeal from the Circuit

OF ILLINOIS,                          )  Court of Du Page County.

                                      )

     Plaintiff-Appellee,              )

                                      )

     v.                               )  No. 92--CF--1104

                                      )

RAYMOND SIWEK,                        )  Honorable

                                      )  Thomas E. Callum,

     Defendant-Appellant.             )  Judge, Presiding.

                                                                  

     JUSTICE INGLIS delivered the opinion of the court:

     Defendant, Raymond Siwek, appeals his conviction of two counts

of possession with intent to distribute cocaine in violation of

section 1401 of the Illinois Controlled Substances Act (Ill. Rev.

Stat. 1991, ch. 56½, par. 1401).  Defendant also appeals the denial

of his motion for a new trial.  We affirm.

                                   FACTS

     The following background is taken from the hearing on

defendant's motions to suppress evidence and from his trial. 

Defendant joined the Chicago police department in 1968.  From 1976

to 1981, defendant worked in the gang crimes unit, involved with

gangs and narcotics.  Later, he was transferred to the organized

crime division, where he was involved in investigating and

arresting large-scale drug dealers.  In 1984, defendant became a

detective and worked on narcotics-related homicides.  Defendant

served two years on a federal homicide drug task force, after which

he was transferred to property crimes in 1989.  He was working in

property crimes up to the time the events at issue in this case

occurred.

     While employed by the Chicago police department, defendant

also served in the National Guard, where he met Brian Marchese.  In

March 1992, Marchese was arrested and charged with driving on a

suspended license.  Marchese contacted defendant and asked him for

help on that case.  Defendant referred Marchese to another

detective who enlisted Marchese as a drug informant.  Marchese,

however, never panned out as an informant for the Chicago police

department.

     On April 6, 1992, Marchese contacted Larry Wiess and offered

to get him drugs.  Wiess was an undercover agent for the Du Page

Metropolitan Enforcement Group (DUMEG).  Wiess and Marchese

attempted to complete several transactions during the next month. 

Although the deals were never completed, Marchese alerted Wiess

about the existence of a possible buyer from Chicago who would want

a kilogram every week-and-a-half.

     Marchese arranged to purchase cocaine from Wiess on May 6,

1992.  Before the meeting, Marchese went to defendant's home and

obtained $12,500 in cash.  Marchese testified that defendant said

that $2,500 was his own money, $10,000 was from a friend, for whom

he would be purchasing the cocaine, and that $500 was included as

his commission for the deal.  Marchese promised to return to

defendant's home by about 11:30 that morning.  

     Marchese then called Wiess and told him that he had the money

and wanted to buy a half-kilogram of cocaine.  When they met,

Marchese told Wiess that he would take the cocaine to the person

who had provided the money.  Marchese handed the money to Wiess. 

Wiess handed Marchese the cocaine in exchange.  Marchese was then

arrested by DUMEG agents at about 11 a.m. on May 6, 1992.

     The agents took Marchese to the Bloomingdale police

department.  At about noon, Marchese called defendant and the

conversation was recorded.  Near the phone was a sign stating that

every phone call was recorded.  Marchese, who does not read well,

testified that he could not and did not read the sign.  He stated,

however, that he was aware that the conversation would be taped

because he learned this from a previous arrest at the station. 

During the conversation, defendant asked Marchese if he had lost

"that," which Marchese took to mean the money, and whether he had

been "set-up."

     Another DUMEG agent, Robert Guerrieri, testified that he could

hear Marchese's end of the conversation.  Guerrieri, however, did

not realize at that time that the phone call was being recorded,

nor did he listen to the recording of the call between Marchese and

defendant.  Guerrieri apparently did, however, communicate his

observations to Wiess.

     On May 6, Marchese was told that he was being charged with a

Super Class X felony which would carry a mandatory minimum prison

sentence of 12 years.  He was offered consideration, however, if he

agreed to cooperate.  Marchese identified his money source as a

Chicago policeman, but declined to cooperate further.  He did not

at that time identify defendant.

     Marchese was placed in the Du Page County jail.  During the

afternoon of May 7, he met with Wiess and Guerrieri, agreed to

cooperate, and identified defendant as his source of money.  After

the agents left, Marchese learned from his wife that defendant had

called Marchese's home and received the impression that defendant

would come and visit him at the jail that night if Marchese did not

get in touch with him.  Concerned, Marchese called one of the DUMEG

agents sometime after 5 p.m.

     Wiess contacted one of the Du Page County assistant State's

Attorneys for instructions.  Shortly after, the assistant informed

Wiess that the first assistant State's Attorney had approved an

emergency tape recording of the impending call between defendant

and Marchese.

     Around 7 p.m., Guerrieri, Wiess, and their supervisor, William

Simmons, arrived at the Du Page County jail and set up equipment in

order to record a call between Marchese and defendant.  At about

7:30, Wiess paged defendant and defendant returned the call.  The

ensuing conversation was recorded.  Defendant and Marchese

discussed the circumstances of Marchese's arrest, his bond

situation, his need for a lawyer, and the need for him to keep

quiet.  Defendant assured Marchese that he had "calmed down" his

"people" by paying them $5,000 from his own pocket.

     On May 8, the agents sought a warrant to record any further

conversations between defendant and Marchese.  The warrant was

granted, and the court determined that an emergency existed to

excuse the warrantless recording made during the evening of May 7. 

The warrant allowed calls to be recorded until 6 p.m. on May 17.

     Marchese remained in the county jail until May 11, when he was

able to make bond.  Marchese continued to cooperate with DUMEG,

speaking to defendant every day from May 11 to May 13.  Each of

these conversations was recorded.  During the conversations,

Marchese and defendant planned to recover the money Marchese had

lost due to his arrest by purchasing cocaine from Marchese's

supplier.  They planned to complete this transaction on May 14, at

Marchese's home.

     Defendant arrived at Marchese's house on the morning of May

14.  Wiess was present, acting as Marchese's supplier.  Wiess

delivered 458 grams of cocaine to defendant.  This transaction was

recorded on videotape.  Defendant left Marchese's house with a bag

containing nine ounces of cocaine. He was arrested as he drove

away, and the cocaine was recovered from under the seat of

defendant's jeep.  At the time of his arrest, defendant said he was

working for Chicago, meaning the police.  Defendant's jeep was

taken to the police department and searched.  A briefcase and three

bottles labeled "cocaine test set" were recovered.

     A search warrant was then executed on defendant's house.  In

the house, police found a few hundred dollars and another briefcase

in defendant's basement.  The briefcase contained a sifter/grinder,

a tackle box, baggies, Manitol and other cutting agents, and other

drug paraphernalia containing cocaine residue.  No other narcotics

were found in the house.  Defendant's work locker was also

searched, but no money or drugs were found.  Police also executed

a search warrant on defendant's safe-deposit box with the result

that no narcotics or money were found.

     Defendant testified on his own behalf and disputed the State's

version of the facts.  According to defendant, he was involved in

narcotics arrests and seizures as part of his responsibilities in

the property crimes unit.  In February 1992, defendant was involved

in a cocaine and stolen property investigation.  He used the

cocaine testing kit which was found in his jeep on May 14 to test

some cocaine he found while executing a search warrant during that

investigation.  The kit had been issued to him by the Chicago

police department.

     Early in 1992, Marchese approached defendant for help on a DUI

case in Du Page County.  Marchese offered his services as a

narcotics informant in exchange for the DUI charges being dropped. 

Defendant passed Marchese on to a Chicago detective who enlisted

Marchese as an informant.  During March and April, Marchese called

defendant a number of times to find out what the detective was

doing on his DUI case, but never informed defendant about his drug

transactions.  

     During the course of their relationship, defendant had loaned

Marchese money a number of times.  As of May 1992, Marchese owed

defendant approximately $4,700.  At the beginning of May, Marchese

asked to borrow $5,000 from defendant to purchase a vehicle and

equipment.  Defendant agreed to loan Marchese $2,500, which he

picked up on May 6, 1992.  Defendant had no idea that Marchese was

planning to buy cocaine with the money, nor did defendant tell

Marchese to buy cocaine for him.

     Later that day, Marchese called defendant and told him that he

had been arrested.  On May 7, at about 6:30 a.m., Marchese again

called defendant.  During that call, Marchese told defendant that

he had been arrested for possessing a large amount of cocaine and

that he had lost $10,000 of someone else's money.  He asked

defendant for a loan to repay the lost money, but would not tell

defendant to whom the money belonged or from whom he had purchased

the drugs.  Marchese asked defendant for help in working out a deal

on the drug case.  Defendant told Marchese that he would pretend to

be the money source so that Marchese could prove his worth and

reliability as an informant to the Du Page County authorities.  

     Marchese next called defendant on May 11 and told him that his

drug supplier still wanted to make a deal.  Later that night

Marchese paged defendant.  They had set up a code at some

unspecified time before the May 11 call where, if Marchese paged

defendant, it meant that Marchese's drug source was present and

might be able to overhear the conversation.  This was supposed to

help defendant set up Marchese's drug supplier.  The two also had

conversations on May 12 and 13 concerning the details of the

impending deal.

     On May 14, 1992, defendant went to Marchese's house, taking

his badge, gun, and briefcase.  Defendant did not notify any of his

superiors that he was going to Bloomingdale to make an undercover

buy because he did not intend to make an arrest at that time. 

Rather, he intended to continue the investigation from the

information he and Marchese would be collecting about the drug

supplier.  

     When defendant arrived at Marchese's house, he assumed the

role of Marchese's money source.  He eventually accepted a package

from Wiess, intending to take it and notify his supervisor of his

undercover activity.  He also intended to tell the detective for

whom Marchese was informing that Marchese had made a case.

     Defendant left Marchese's house with a package of cocaine and

placed it under the front seat of his jeep.  As he pulled away from

the house, he was surrounded by squad cars and arrested.  He

informed the arresting officers that he was a Chicago police

officer conducting a narcotics investigation.

     Defendant explained that the drug-paraphernalia-containing

briefcase found in his home was the equipment he received when he

worked in the gang and narcotics divisions.  The paraphernalia it

contained had been seized during various raids, and the officers

used it to further subsequent investigations.  

     The jury found defendant guilty of both counts of possession

with intent to deliver cocaine.  On May 2, 1995, defendant was

sentenced to concurrent 15-year terms on both counts.  Defendant

appealed his convictions.

     On May 22, 1995, defendant filed a motion for a new trial

based on newly discovered evidence.  On September 29, 1995, the

trial court denied defendant's motion and defendant timely

appealed.  We granted defendant's subsequent motion to consolidate

both appeals.

                                DISCUSSION

     Defendant raises seven issues on appeal:  (1) whether the

video of defendant's May 14, 1992, drug transaction should have

been suppressed because of lack of statutory authorization to make

secret video recordings; (2) whether the May 6, 1992, telephone

call from the Bloomingdale police station between Marchese and

defendant should have been suppressed for lack of compliance with

the requirements of the various Illinois eavesdropping statutes;

(3) whether the warrantless recording and transcript of the May 7,

1992, conversation between Marchese and defendant should have been

suppressed due to lack of a true emergency; (4) whether the trial

court erred in applying the good-faith exception to the search

warrant used to search defendant's home; (5) whether the civil

forfeiture case against defendant's vehicle and money bars his

prosecution under the double jeopardy clauses of the Illinois and

United States Constitutions; (6) whether defendant is entitled to

a new trial on the grounds of newly discovered evidence; and (7)

whether Marchese exercised sufficient dominion and control to

possess narcotics in order to hold defendant accountable for his

conduct.

                                     I

     Defendant's initial issue on appeal is whether the trial court

erred by denying defendant's motion to suppress the videotape

recording of the May 14, 1992, meeting.  Defendant argues that

Illinois law does not authorize electronic video surveillance

because the eavesdropping statutes (Ill. Rev. Stat. 1991, ch. 38,

pars. 14--1 et seq., 108A--1 et seq., 108B--1 et seq.) concern only

the interception of oral communications and are silent as to the

matter of interception of visual images.  Defendant asserts that,

because there is no statutory authorization for intercepting visual

images, the State is not allowed to intercept the images. 

Defendant contends that the video surveillance constituted a search

and seizure, requiring the application of state and federal

constitutional safeguards, particularly the warrant requirement. 

Therefore, because the State failed to procure a warrant before the

videotaping of the May 14 transaction, defendant argues that the

video is the fruit of an illegal search and must be suppressed.

     As an initial matter, we note that the eavesdropping statute

(Ill. Rev. Stat. 1991, ch. 38, pars. 14--1 et seq. (now codified,

as amended, at 720 ILCS 5/14--1 et seq. (West 1992))) was amended

during the pendency of defendant's appeal.  The amendment extended

the coverage of the eavesdropping statute to all conversations,

regardless of whether they were intended to be private.  The

previous version of the eavesdropping statute, cited above,

excluded conversations which a party did not intend to be private. 

People v. Herrington, 163 Ill. 2d 507, 510 (1994); People v.

Beardsley, 115 Ill. 2d 47, 54-55 (1986).  We conclude that the

version of the eavesdropping statute cited above was in effect

during May 1992 and is applicable to this case.  See People v.

Miller, 255 Ill. App. 3d 577, 583-84 (1994).

     Defendant's argument fails from the outset, because the

videotaping did not constitute a search under the federal or state

constitutions.  "A 'search,' as contemplated by the fourth

amendment to the United States Constitution, occurs when an

expectation of privacy considered reasonable by society is

infringed."  People v. Mannozzi, 260 Ill. App. 3d 199, 203 (1994). 

"If an inspection by police does not intrude upon a legitimate

expectation of privacy, there is no 'search' subject to the warrant

clause of the fourth amendment."  Mannozzi, 260 Ill. App. 3d at

203.

     In this case, defendant alleges that the videotaping of the

drug transaction constituted an illegal search and seizure and

violated the eavesdropping statute.  Where consent is given by one

party, the other party does not have a legitimate expectation of

privacy, and eavesdropping cannot occur.  Herrington, 163 Ill. 2d

at 510; Beardsley, 115 Ill. 2d at 53.  We find the reasoning in

these cases compelling.  Here, defendant did not have an

expectation of privacy with Marchese.  Marchese had consented to

allow the videotaping to occur.  The police did not obtain a

videotape of a transaction that they could not otherwise have

observed.  See Herrington, 163 Ill. 2d at 511 (consenting party to

conversation "did not listen to or record a conversation she could

not otherwise have heard").  Because defendant, as to his

transaction with Marchese, did not have a legitimate expectation of

privacy in Marchese's house, and the police did not intrude, there

was no search under the fourth amendment.  See Mannozzi, 260 Ill.

App. 3d at 203 (police officer "did not intrude on any expectation

of privacy" by securing the defendant's car for removal to the

police station, and, "[t]hus, he did not search defendant's car"). 

Because there was no search, there was no requirement that the

police obtain a warrant to videotape.  Therefore, there was no

constitutional violation associated with the videotape.

     Our conclusion is fortified by consideration of People v.

O'Toole, 226 Ill. App. 3d 974 (1992).  There, the police videotaped

a conversation between the defendant and a consenting police agent. 

O'Toole, 226 Ill. App. 3d at 979-80.  The defendant attempted to

suppress the videotape, and the trial court denied his motion. 

O'Toole, 226 Ill. App. 3d at 981.  As an alternate ground for

affirmance, the court held that, in view of Beardsley, the

videotape did not need the support of an eavesdropping order to be

admissible.  O'Toole, 226 Ill. App. 3d at 983.  Likewise, here,

Marchese was a consenting police agent, and, because there was no

intrusion into defendant's privacy, the eavesdropping statute did

not apply.  Thus, the trial court did not err by denying

defendant's motion to suppress the videotape.

     In light of our resolution of the issue, we need not consider

whether videotaping need be judicially authorized, where, as here,

there is no search or seizure under the fourth amendment.  We also

note that in this case the intrusiveness of the  electronic visual

surveillance is truly minimal.  A single transaction was captured

on videotape between the State's agents and defendant.  The video

camera was emplaced within the home of Marchese, a State agent. 

The defendant visited Marchese's home and had no reasonable

expectation of privacy with regard to Wiess or Marchese.  Both

could, and did, testify about what transpired at Marchese's home on

May 14, 1992.  The interception of the video images, therefore,

represents only a minimally greater intrusion into defendant's

privacy than would the duly authorized interception of the oral

conversation.  Given the minimal nature of the intrusion in this

case and that the interception was accomplished without a search, 

we find that there was no violation of defendant's rights

sufficient to warrant the suppression of the videotape of the May

14, 1992, conversation.  Accordingly, we hold that the trial court

correctly denied defendant's motion to suppress the videotape.

     [Material omitted as nonpublishable under Supreme Court Rule

23].

                                CONCLUSION

     We affirm defendant's convictions of possession with intent to

distribute cocaine.

     Affirmed. 

     BOWMAN and DOYLE, JJ., concur.